**In the Interest of A.L.E.**

**No. 14–07–00329–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 12, 2009.

Matthew Walter Mahoney, Pasadena, for Appellant.

Mary Quinn, Chris Spofford, Houston, and Robert D. Ettinger, Austin, for Appellee.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

This appeal arises from a suit to modify conservatorship of a minor child. Appellant, Dawn Marie Robertson Simmons ("Dawn"), is the mother of thirteen-year-old A.L.E.; appellee, Gregory Chase Edwards ("Chase"), is the child's father. In three issues, Dawn appeals the trial court's March 2, 2007 order awarding Chase the right to establish their daughter's primary residence, and requiring Dawn to provide a "negative" drug and alcohol test to Chase, as a pre-condition to her exercise of unsupervised possession of A.L.E. We affirm.

## BACKGROUND

During the early 1990s, Dawn and Chase had a tumultuous relationship that was later described as having been "fraught with drugs." In fact, drug use was apparently persistent throughout the unmarried couple's four-year courtship. Dawn had a brief period of sobriety during her pregnancy with their daughter, A.L.E., who was born in 1995, but she later resumed the use of drugs and alcohol.

The couple's relationship ended shortly after the birth of A.L.E., who thereafter lived with Dawn. Chase, who has been sober since March 1999, expressed the desire to remain involved in his daughter's life. In February 2001, the parties

reached a custody agreement in which they would be appointed as A.L.E.'s joint managing conservators. Dawn was given the right to designate the child's primary residence, while Chase was granted a standard possession order governing his visitation with his daughter. Their agreement was approved by the trial court on February 19, 2001.

In April 2006, however, Chase sought modification of the previous custody order by filing a petition in which he sought to be appointed as A.L.E.'s sole managing conservator. Chase further requested that Dawn be denied visitation with A.L.E. or, alternatively, that her periods of possession be supervised. In support of these requests, Chase alleged that Dawn was abusing drugs and alcohol, and was neglecting A.L.E., while in possession of the child.

The trial judge ordered both parents to submit to drug testing, psychological examination, and alcohol and drug evaluation. Dawn tested positive for cocaine on two separate occasions. After a two-day trial, the trial court granted Chase's request to modify the previous custody order. Both parents remained as A.L.E.'s joint managing conservators; however, the trial court modified its previous order giving Chase the right to determine the child's primary residence and taking that right from Dawn.

Dawn was given a standard possession order under which she could exercise unsupervised possession. However, she was ordered to submit for drug testing for a period of three years, and if she were to test positive for drugs or alcohol during that time, she could have only *supervised* visitation with the child.

Dawn timely brought this appeal to challenge, through three issues, the trial court's modification of the previous custody order and placement of conditions upon Dawn's right to exercise unsupervised possession of her daughter. Specifically, she contends that the trial court abused its discretion by (1) modifying the custody order absent proof of a substantial and material change in circumstances, and (2) entering an unconstitutional and unenforceable possession order that she contends deprives her of meaningful access to her child.

## STANDARD OF REVIEW

■ Because a trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, we review a decision to modify conservatorship for a clear abuse of that discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it clearly fails to correctly analyze or apply the law. *See In re D.S.*, 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■ We remain mindful that the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the "forces, powers, and influences" that may not be apparent from merely reading the record on appeal. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.-Dallas 2004, no pet.). Therefore, we defer to the trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute our judgment for the trial court's. *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

■ Legal and factual insufficiency challenges are not independent grounds for asserting error in custody determinations, but are relevant factors in assessing whether the trial court abused its discre-

tion. *Niskar*, 136 S.W.3d at 753; *D.S.*, 76 S.W.3d at 516. An abuse of discretion does not occur if some evidence of a substantive and probative character exists to support the trial court's decision. *Bates v. Tesar*, 81 S.W.3d 411, 424–25 (Tex.App.-El Paso 2002, no pet.). We consider only the evidence most favorable to the trial court's ruling, and will uphold its judgment on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Niskar*, 136 S.W.3d at 753–54.

## MODIFICATION OF PREVIOUS CONSERVATORSHIP ORDER

█ In an effort to ensure stability and continuity for children, Texas law has imposed "significant hurdles" before a conservatorship order may be modified. *See Bates*, 81 S.W.3d at 426; *Jenkins v. Jenkins*, 16 S.W.3d 473, 478 (Tex.App.-El Paso 2000, no pet.). Specifically, a trial court may modify a conservatorship order if modification would be in the child's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the previous order. Tex. Fam.Code Ann. § 156.101 (Vernon 2008). As a threshold determination, then, the moving party must show a material and substantial change in circumstances; otherwise, the petition must be denied. *See Zeifman v. Michels*, 212

S.W.3d 582, 589 (Tex.App.-Austin 2006, pet. denied).

In her first issue, Dawn challenges the trial court's express finding of a material and substantial change in circumstances since the previous custody order.[1] She acknowledges that the trial judge was presented with evidence of her recent drug and alcohol abuse. However, she notes that she also had "substance abuse issues" at the time of the 2001 custody order. She contends, then, that modification was inappropriate because *her* circumstances have not significantly and materially changed in the intervening years. But modification is available if the *child's* circumstances have materially and substantially changed, even if the *conservator's* have not. *See* Tex. Fam.Code Ann. § 156.101(1). Here, Chase produced evidence that, since 2001, A.L.E.'s circumstances have materially and substantially changed *as a product* of Dawn's substance abuse.[2]

█ In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines. *See Zeifman*, 212 S.W.3d at 593; *In re Z.B.P.*, 109 S.W.3d 772, 779 (Tex.App.-Fort Worth 2003, no pet.). Instead, the court's determination is fact-specific and must be made according to the circumstances as they arise. *See Zeifman*, 212 S.W.3d at 593; *Wright v. Wright*, 610 S.W.2d 553, 555 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ). A non-comprehensive list of materi-

---

1. Chase also alleged, and the trial court expressly found, that modification would be in the child's best interest. *See* Tex. Fam.Code Ann. § 156.101. That requisite element was not hotly contested at trial, and the court's finding has not been explicitly challenged on appeal.

2. Dawn cites *In re K.J.M.* for the proposition that a parent's non-improvement of a substance-abuse problem, by itself, cannot amount to a change in circumstances. 138 S.W.3d 536 (Tex.App.-Houston [14th Dist.] 2004, no pet.). However, *K.J.M.* is factually distinct. There, the party seeking modification conceded that there had been no change in circumstances since the previous custody order. *See id.* at 538. In this case, by contrast, the trial court was presented with evidence that, since 2001, Dawn's substance abuse has significantly and negatively affected A.L.E. Therefore, *K.J.M.* is not controlling here.

al changes, as described by other courts, can include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody. *See In re Marriage of Chandler,* 914 S.W.2d 252, 254 (Tex.App.-Amarillo 1996, no writ); *Wright,* 610 S.W.2d at 555.

■ As an initial matter, Dawn contends that Chase did not establish the conditions that existed when the 2001 custody order was entered; thus, she concludes that Chase could not, and did not, demonstrate how those conditions changed.[3] *See Zeifman,* 212 S.W.3d at 589 ("To prove that a material change in circumstances has occurred, the petitioner must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the motion to modify."). However, the law does not prescribe any particular method for a showing of changed circumstances, which may be established by circumstantial evidence. *See Wright,* 610 S.W.2d at 554–55; *T.A.B. v. W.L.B.,* 598 S.W.2d 936, 939 (Tex.Civ. App.-El Paso), *writ ref'd n.r.e.,* 606 S.W.2d 695 (Tex.1980); *Brown v. Brown,* 500 S.W.2d 210, 216 (Tex.Civ.App.-Texarkana 1973, no writ). Even in the absence of *direct* evidence of the conditions in 2001, the record clearly shows that the facts that are relied upon as showing a material change in circumstances, which are discussed below, occurred after the earlier custody order. *See Brown,* 500 S.W.2d at 216; *In re J.A.R.,* No. 2–04–123–CV, 2005 WL 2839107, at *8 (Tex.App.-Fort Worth Oct.27, 2005, no pet.) (mem.op.).

■ After reviewing the record, we conclude that the trial court did not abuse its discretion by finding a material and substantial change in circumstances since the entry of the previous custody order in February 2001. The record is replete with evidence that Dawn's substance-abuse problems have significantly, and negatively, affected A.L.E. since she came to reside with her mother.

In late 2001, A.L.E. was diagnosed as suffering from panic attacks, and was treated with anti-depressant medication. After Dawn decided to wean her daughter from the medication, Chase noticed that A.L.E. began to exhibit symptoms similar to those that prompted her treatment for panic attacks. Then, in approximately 2004, A.L.E. cut her arms, reportedly in response to Dawn's drinking problems and abuse. Dr. Jean Guez, a court-appointed psychologist, opined that the cutting and panic attacks represented "significant red flags."

In March 2006, Chase discovered a journal that A.L.E. had written, in which she asked to be removed from Dawn's house. In her journal, A.L.E. also stated that she was concerned about, and considered herself to be secondary to, Dawn's alcohol consumption. She reported that she had been exposed to marijuana and "Jello shots" while in Dawn's care, and that she did not receive much supervision from her mother. The child also indicated that she did not feel emotionally stable while she was in her mother's care.

After discovering his daughter's journal, Chase pressed her for more details about Dawn's alcohol abuse. In April 2006, he was told that Dawn, after becoming intoxicated, had screamed and thrown items (such as a cigarette lighter) at A.L.E., and

---

**3.** We note that, at trial, Dawn repeatedly objected to Chase's efforts to demonstrate some of the conditions that immediately preceded the entry of the 2001 custody order.

then left the house for extended periods of time. During one such drinking fit, Dawn yelled at A.L.E., threw the child's computer and monitor across the room, and then left the house with her then-boyfriend for the entire weekend, during which time the child was left to be supervised by a high-school student. A.L.E. also stated that Dawn and her boyfriend had called her a "bitch." According to Chase, these incidents were becoming more frequent, and were escalating to the point that the child was "living in constant fear."

In May 2006, after the trial court ordered both parents to submit to drug testing, Dawn tested positive for cocaine and cocaethylene.[4] She again tested positive for cocaine in October 2006. Dawn has admitted that she usually had five to six drinks at a time, and that her drinking has caused her to suffer "emotional problems." She denied "regular" cocaine use, although she acknowledged she had taken drugs within twelve months of her August 2006 assessment by Karen McKibben Morris, who completed a substance-abuse evaluation of both parties. Ms. McKibben testified at trial that Dawn is alcohol-dependent, borderline depressive, and in need of treatment. Dr. Guez agreed that Dawn needs treatment, and opined that Dawn cannot care for herself adequately to maintain primary conservatorship of A.L.E. Thus, the record contains evidence indicating that A.L.E.'s home environment has changed, and that Dawn's substance-abuse problems have rendered her unfit to exercise primary custody of her daughter. *See Marriage of Chandler*, 914 S.W.2d at 254; *Wright*, 610 S.W.2d at 555.

We conclude that at least some evidence of a substantive and probative character exists to support the trial court's finding of a material and substantial change in circumstances since the previous custody order. *See Bates*, 81 S.W.3d at 424–25. Thus, after considering the evidence favorable to the trial court's ruling, we conclude that the trial court did not abuse her discretion by modifying the 2001 custody order. We overrule appellant's first issue.

## CONDITIONAL UNSUPERVISED POSSESSION

Dawn's two remaining issues, which overlap, arise from the trial court's placement of conditions upon the standard possession order. *See* Tex. Fam.Code Ann. §§ 153.311–.317 (Vernon 2008). Initially, the order permits Dawn to exercise unsupervised possession of her daughter. However, Dawn is to submit to drug testing for three years[5] and, prior to exercising her scheduled periods of possession, she must present the drug-test results to Chase.[6] If those results indicate a "positive" test for either drug or alcohol use,

---

4. According to Bruce Jeffries, who performed drug testing on the parties, cocaethylene is a chemical that is created by the mixing of cocaine and alcohol. *See, e.g., Roberts v. State*, 220 S.W.3d 521, 529 (Tex.Crim.App. 2007) (describing metabolic process in which cocaethylene is formed); *Morris v. Dallas Morning News, Inc.*, 934 S.W.2d 410, 414 (Tex.App.-Waco 1996, writ denied).

5. Dawn has not questioned a trial court's authority to order drug testing when drug use is a material issue in the case. *See In re C.R.*, 263 S.W.3d 368, 375–76 (Tex.App.-Dallas 2008, no pet.); *In re C.D.B.*, 218 S.W.3d 308,

311 (Tex.App.-Dallas 2007, no pet.); *Monaghan v. Crawford*, 763 S.W.2d 955, 957–58 (Tex.App.-San Antonio 1989, no writ).

6. In 1998, the Ninth Court of Appeals encountered a similar, but not identical, visitation order. *See In re A.D.H.*, 979 S.W.2d 445, 447 n. 1 (Tex.App.-Beaumont 1998, no pet.) ("Under the provisions of the agreed divorce decree, Doris and Alvin were required to deny Perry visitation unless he passed a weekly drug test."). There, the Beaumont court was not asked to decide the propriety of that order.

her periods of possession thereafter are to be supervised by "a program equal to the S.A.F.E. program in Houston, Texas[.]" In her second and third issues, Dawn argues that this conditional possession order deprives her of due process and is unenforceable.

### A. Due Process

The court's possession order initially allows Dawn to take *un*supervised possession of A.L.E. Dawn insists that, before that provision can later be modified to require supervised visitation, Chase should have to affirmatively request modification under section 156.101. Dawn contends, then, that the court's "self-modifying" possession order deprives her of due process because, as phrased, it violates the Family Code's mandatory requirements of pleading and proof before modification can be effected.

 However, the record does not indicate that Dawn's due-process argument was presented to the trial court. Therefore, she has waived this complaint. *See In re L.M.I.*, 119 S.W.3d 707, 708 (Tex.2003) ("[A]dhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose."); *Lynch v. Port of Houston Auth.*, 671 S.W.2d 954, 957 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("Even constitutional challenges not expressly presented to the trial court by written motion, answer or other response ... will not be considered on appeal as grounds for reversal."). Requiring parties to preserve their complaints in family-law cases furthers the legislative intent that such cases be resolved expeditiously and with finality. *See L.M.I.*, 119 S.W.3d at 711; *In re B.L.D.*, 113 S.W.3d 340, 354 (Tex.2003); *In re K.R.S.*, No. 14-07-00080-CV, 2008 WL 2520812, at *2 (Tex.App.-Houston [14th Dist.] June 24, 2008, no pet.) (mem.op.). Accordingly, we overrule appellant's due-process complaint, and turn our attention to her argument that the court's possession order deprives her of meaningful access to A.L.E.

### B. Enforceability of Possession Order

Dawn also claims that, under the trial court's modified order, her right to possession or access of A.L.E. is subject to Chase's "sole discretion." She therefore contends that the possession order is unenforceable. We disagree.

The public policy of Texas is to ensure that children enjoy "frequent and continuing contact with parents who have shown the ability to act" in their child's best interest. Tex. Fam.Code Ann. § 153.001(a) (Vernon 2008). However, trial courts are permitted to place conditions on a parent's visitation if necessary for the child's best interest. *See In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Hopkins v. Hopkins*, 853 S.W.2d 134, 137–38 (Tex.App.-Corpus Christi 1993, no writ). Thus, Texas appellate courts have repeatedly held that *limited* visitation does not amount to *deprived* visitation. *See Niskar*, 136 S.W.3d at 756 ("When a trial court denies a parent overnight visitations with the child, it has not denied the parent's visitation rights."); *Beaupre v. Beaupre*, 700 S.W.2d 353, 354–55 (Tex.App.-Fort Worth 1985, writ dism'd) (holding that visitation provision that temporarily limited appellant's access did not constitute *denial* of access); *see also Malekzadeh v. Malekzadeh*, No. 14-05-00113-CV, 2007 WL 1892233, at *16 (Tex.App.-Houston [14th Dist.] July 3, 2007, pet. denied) (mem.op.) (" '[W]e note that by restricting appellant's visitation with and possession of the child, the trial court has not denied appellant his rights as parent.' ") (citation omitted).

Dawn did not contend at trial, nor does she suggest on appeal, that the trial court could not have ordered supervised visitation at the outset.[7] Instead, her complaint is that, because she must provide the drug-test results *to Chase* before each period of possession, Dawn's access to her child is therefore subject to his discretion.[8] We disagree that the court's order, which is specific and enforceable by contempt, confers any such discretion to Chase.

A trial court may not give one parent the unbridled discretion, unenforceable by contempt, to decide whether the other parent may have access to, or possession of, her children. *See Roosth v. Roosth,* 889 S.W.2d 445, 452 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *In re A.P.S.,* 54 S.W.3d 493, 498–99 (Tex. App.-Texarkana 2001, no pet.). Thus, when a court places restrictions or conditions on a conservator's possession rights, the court must specifically define those terms in its decree. *A.P.S.,* 54 S.W.3d at 499; *Hale v. Hale,* No. 04–05–00314–CV, 2006 WL 166518, at *3 (Tex.App.-San Antonio Jan. 25, 2006, pet. denied) (mem.op.). The judgment must state, in clear and unambiguous language, what is required for the conservator to comply, and the terms must be specific enough to permit the conservator to enforce the judgment by contempt. *See Roosth,* 889 S.W.2d at 452. We conclude that the trial court's order meets both of these requirements.

### 1. Specificity

For a period of three years, Dawn is ordered to present to a specific drug-testing facility—the National Screening Center, in Houston—and to submit to three drug tests: a urine analysis, an EtG test, and a hair follicle test. The order also specifies *when* Dawn must comply: urine analysis must be completed no more than forty-eight hours prior to each period of Dawn's possession of A.L.E. and, initially, the EtG and hair follicle tests must both take place on the 12th day of each month. After the first year of testing, if Dawn's drug tests remain negative for drugs and alcohol, she will submit for EtG and hair follicle tests on a less frequent basis.[9] As long as she continues to test negative for drugs and alcohol, she may exercise unsupervised visitation with her daughter. If, by contrast, the test results indicate a positive finding for drugs or alcohol, Dawn's periods of possession thereafter must be supervised:

> In the event any of [Dawn's] urine, EtG or hair drug testing come back with a positive finding for drugs or alcohol ... [Dawn's] periods of possession shall im-

**7.** It is beyond question that, in an appropriate case, a trial court may order a parent's visitation to be supervised. *See George,* 238 S.W.3d at 469–71 (upholding trial court's order requiring mother's visitation to be supervised by S.A.F.E. program); *Hopkins,* 853 S.W.2d at 138 (finding trial court did not abuse discretion by ordering supervised visitation, given evidence of appellant's drug use); *In re H.A.P.,* No. 11–05–00180–CV, 2006 WL 648312, at *2 (Tex.App.-Eastland March 16, 2006, no pet.) (mem.op.) (upholding supervised-visitation order in light of father's drinking problem).

**8.** Dawn's brief contains allegations that, since the trial court's modification order, Chase has been depriving her of unsupervised access to her child. That claim is outside the appellate record; therefore, we disregard it. *See Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454, 458 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ("It is ... improper for parties to rely on matters outside the record in making arguments to the court.").

**9.** Specifically, at that point, Dawn must submit to EtG and hair follicle tests once every three months, beginning on May 12, 2008. If her test results also remain negative for the second year, she must submit to EtG and hair follicle tests only once every six months, beginning on August 12, 2009.

mediately become supervised by The Kid's Exchange in Austin, Texas or a program equal to the S.A.F.E. program in Houston, Texas for a period of one year or until drug tests indicate [Dawn] is totally clear of all drugs and alcohol for a period of one year.

Thus, the court's order clearly and unambiguously states what Dawn must do to have unsupervised access to A.L.E.

The court's order is not unlike one that was upheld by the Third Court of Appeals in 2005. *See In re L.M.M.*, No. 03–04–00452–CV, 2005 WL 2094758 (Tex.App.-Austin Aug.31, 2005, no pet.) (mem.op.). There the trial court conditioned the appellant's possessory rights on her continuation of "a regular course of psychological treatment" with a specific therapist. *See id.* at *2. The court also provided for her possession to increase if certain conditions were met. *See id.* On appeal, however, the appellant contended that the trial court's order deprived her of specific, enforceable periods of possession. *See id.* at *9. The Austin Court of Appeals disagreed:

> The June 2004 order stated that [appellant] had to (1) begin treatment with Dr. Lowry, (2) notify all the parties of such compliance, and (3) continue that treatment for thirty days. At that point, she was entitled to supervised visitation at Kids Exchange on specified dates and to telephone contact with the children. Thereafter, beginning in August 2004, as long as she continued treatment with Dr. Lowry, [appellant] was entitled to increased periods of possession and access—with very specific times, dates, and locations provided for—culminating in a December 2004 return to standard possession. *Accord-*

*ingly, the terms of what [appellant] was required to do in order to obtain and enhance her rights of possession and access were unambiguous, specific, and enforceable.*

*Id.* at *10 (emphasis added). Here, the trial court crafted a possession order that carefully detailed each of the specific requirements with which Dawn must comply if she is to have unsupervised visitation of A.L.E. We conclude that the order meets the "specificity" requirements for a valid possession order.

### 2. Enforcement through Contempt

■ Dawn may also enforce this order, if necessary, by contempt. The objective test results—several of which appear in the appellate record—clearly specify whether the sample was "NEGATIVE" or "POSITIVE" for each tested-for drug.[10] Chase need not construe or interpret the results; instead, his only involvement is to receive the results from Dawn prior to each period of her possession of A.L.E., and to confirm whether the results recite any positive findings. Thus, by briefly reviewing the test results—a task that could be accomplished by almost any layperson—Chase and Dawn can readily verify whether Dawn is entitled to unsupervised possession.

The order leaves no room for Chase to exercise any discretion, and Dawn needs no agreement from him to exercise her visitation rights as set out in the court's ruling. Thus, the order is unlike those that other courts have found to be unenforceable. *See Roosth,* 889 S.W.2d at 452 (reversing order that required mother's mutual agreement to father's possession of children); *A.P.S.,* 54 S.W.3d at 498 (reversing order stating, "The possession pe-

---

**10.** Dawn has not challenged the reliability of the National Screening Center's drug-test pro-

tocol or the accuracy of its test results.

riods of the children by [appellant] are to be at reassonable [sic] times and places as determined by [appellee]"); *Hale*, 2006 WL 166518, at *1, *3 (reversing non-specific order that prevented father to see daughter "until a therapist recommends visitation"). That is, if Dawn fully complies with the court's order and is nonetheless improperly precluded from taking unsupervised possession of A.L.E., she may enforce the court's order through contempt proceedings.

We conclude that the trial court did not abuse its discretion by entering a specific, enforceable possession order that placed conditions on appellant's unsupervised possession of her daughter. We therefore overrule appellant's second and third issues.

## CONCLUSION

We find no abuse of discretion in the appellate record. Accordingly, the judgment of the trial court is affirmed.