Reversed and Rendered and Memorandum Opinion filed April 28, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00600-CV

___________________

 

Jimmy Ervin Anderson, Appellant

 

V.

 

Hollie Marie Anderson Carranza,
Appellee



 



 

On
Appeal from the 245th District Court

Harris County,
Texas



Trial Court Cause No. 2003-55514

 



 

 

MEMORANDUM OPINION

            Following a bench trial, the court granted the motion
of appellee Hollie Marie Anderson Carranza to modify the parent-child
relationship.  The court named Carranza and appellant Jimmy Ervin Anderson
joint managing conservators of the couple’s two children and expanded Carranza’s
terms of possession.

            In
two issues, Anderson challenges the sufficiency of the evidence to support
findings that (1) there was a material and substantial change in the
circumstances of any person affected by the prior terms of possession and (2)
changing the terms of possession was in the children’s best interests. 
Concluding there was no evidence to support a finding there had been a material
and substantial change in circumstances to warrant modification, we reverse and
render judgment denying the motion.

Background

Anderson and Carranza
divorced in 2005.[1] 
There were two children of the marriage:  A.A., born in 1997; and J.A., born in
2001.[2] 
At the time of the divorce, Carranza was living with her present husband, with
whom she had borne a child.  In the divorce decree, the court named Anderson as
sole managing conservator and Carranza as possessory conservator because naming
Carranza as a joint managing conservator was “not in the best interest of the
children.”  Based on the testimony of A.A.’s therapist, the court ordered that
Carranza’s periods of possession “be supervised at all times through the SAFE
Supervised Visitation Program.”[3] 
Carranza was ordered to pay all fees and costs assessed by the SAFE program and
was granted access to the two children for four hours on alternate Saturdays.

In February 2006,
Carranza filed a motion to modify the parent-child relationship.  She requested
that she be appointed as the person who has the right to designate the primary
residence of the children, that the court declare the supervised visitation
void, and that her possession of the children conform to the Texas Family
Code’s standard possession order.[4] 


The court heard the
motion on March 11, 2009.[5] 
On April 20, 2009, the court issued temporary orders, which provided, among
other matters, that Carranza and Anderson be appointed temporary joint managing
conservators of the children and that Carranza’s periods of possession or
access be continued through SAFE in accordance with the standard SAFE
visitation schedule of four hours on alternate Saturdays.

The case came before the
court for final trial on July 30, 2009.  The parties stipulated that, in
rendering final judgment, the court also would consider evidence admitted at
the March 11 hearing.[6]

In her petition,
Carranza did not specify the changed circumstances justifying her request to
modify the parent-child relationship.  At the hearings, she testified her
changed circumstances were her improved health, her stability, and her family. 
She also referred to a change in Anderson’s circumstances.

According to Carranza,
at the time of the divorce, she was totally disabled because of a serious
automobile accident, but presently she was “in perfect health.”  On
cross-examination, she admitted she suffered from bi-polar disorder and was
taking Paxil, Welbutrin, and Abilify.

Carranza testified she had
been together with her present husband for five years.  She referred to the
three children for whom she had cared during the last four years and testified
she had no problems with them, that they were “perfect.”[7]  She also
testified her son C.C. has “pervasive development disorder, which is on the
autistic spectrum.”  When asked why she believed increasing her access to the
children was appropriate at this time, she answered, “I’m an excellent mother.”

Finally, Carranza testified
Anderson had “moved in with his girlfriend” and the children were living with
Anderson and the girlfriend.  According to SAFE executive director, Mary
Timmons, Carranza told her that the girlfriend had been arrested and jailed
overnight.

According to Timmons,
Carranza visited the children only three times between the divorce and the
March 11 hearing, and her visitation privileges were suspended because of
failure to pay the required fees.  The standard fee at the time was $30.00 per
month, but Carranza told SAFE she could not afford the standard fee, so SAFE
gave her a reduced fee of $5.00 per month.  SAFE later learned Carranza was
living with her present husband, who was earning $80,000 to $90,000 per year. 
SAFE then required Carranza to pay the standard rate retroactively for her
visitation.  The past due fee totaled $425.00, and Timmons repeatedly told
Carranza she could resume visitation through the SAFE program if she would pay
the past due fees.

On March 12, 2009,
Carranza completed additional intake papers for SAFE.  On March 30, 2009, she
completed the registration papers and paid the fees.  She visited the children
on April 25, May 9, May 23, and June 6, 2009.  Anderson cancelled a visit on
June 20, and had not rescheduled it by the time of the final trial on July 30. 
During the four-hour visits, Anderson would not let the children eat anything
he had not provided, including food provided by SAFE.  Anderson told SAFE he
was afraid Carranza would put something in the children’s food—that she had
done so before.

When cross-examined
about her financial situation, Carranza testified her husband lost his job in
February 2009 and was unemployed as of July 30, 2009.  Carranza had not earned
any income since the divorce, but hoped to earn money by selling clothes on
eBay.  Carranza and her husband had monthly expenses of $4,000 and no means of
support.[8] 
Carranza had $492 in the bank.  She had no health insurance and, since the
divorce, never had health insurance for A.A. or J.A.  She had been found in
contempt for failure to pay child support in 2006 and, as of July 30, 2009, had
not made her last two child support payments.

The following two
witnesses testified about A.A.:  Christie Moore, a special education aide at
A.A.’s school; and Janet Thompson, a marriage and family counselor who was
treating A.A.  Moore testified A.A. had improved since the divorce and seemed “be
doing really, really well.  He’s very smart in class. He has acquired a few
friends, which is very good for him socially being that he lacks that.”

Thompson had been
treating A.A. since September 2008 and had talked with him alone many times.  Based
on statements made by A.A. to Thompson during his treatment, she concluded that
visitation outside SAFE “would definitely be a bad thing.”  Thompson concluded
that Carranza, of her own volition, had been inconsistently involved in her
children’s lives.  Thompson stated, “I’m aware [Carranza] has not been in their
lives for quite sometime [sic].”[9] 
Thompson testified A.A. would “like to have his mother be consistent and be
able to rely on her, but he doesn’t believe he can.”  She elaborated, “[A.A.]
only wants to be in contact with [Carranza] if she will follow through this
time.”  Based on her treatment of, and sessions with, A.A., Thompson believed
it would be detrimental to A.A. if Carranza had access to him unless the
visitation was monitored and supervised through SAFE.

On May 4, 2010, the
trial court issued an order naming Anderson and Carranza joint managing
conservators and granting Carranza standard visitation.  On June 7, 2010, the
court signed findings of fact and conclusions of law that included the
following:

5.  Changing conservatorship or the terms and conditions of
conservatorship would be in the best interest of the children.

6.  Changing Hollie Anderson Carranza’s possession of
and/or access to the children would be in the best interest of the children.

7.  Hollie Anderson Carranza’s petition to modify should
not be denied. Hollie Anderson Carranza established the requirements for
modification under section 156.101 of the Texas Family Code.

8.  It is in the best interest of the children that Hollie
Anderson Carranza and Jimmy Anderson be appointed joint managing conservators
of the children.

9.  It is in the best interest of the children that Hollie
Anderson Carranza no longer have supervised access to the children the subject
of the suit.

10.  It is in the best interest of the children that Hollie
Anderson Carranza have periods of possession that do not vary from the Standard
Possession Order.

11.  There has been a material and substantial change of
circumstances of Jimmy Anderson, Hollie Anderson Carranza, [A.A.], [J.A.] or
any party affected by the order.

            Anderson
appealed.  He argues the trial court abused its discretion in naming Carranza
joint managing conservator and expanding her terms of possession.   

Standard of Review

            Because a trial
court has broad discretion to decide the best interest of a child in family law
matters such as custody, visitation, and possession, we review a decision to
modify conservatorship for a clear abuse of that discretion.  See Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  A trial court abuses its
discretion when it acts arbitrarily or unreasonably, or when it clearly fails correctly
to analyze or apply the law.  See In re D.S., 76 S.W.3d 512, 516 (Tex.
App.—Houston [14th Dist.] 2002, no pet.). Under the abuse-of-discretion
standard, legal and factual sufficiency of the evidence are not independent
grounds of error, but are factors in assessing whether the trial court abused
its discretion.  Baltzer v. Medina, 240 S.W.3d 469, 475 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).

An appellant challenging the sufficiency of the
evidence must show that the evidence, or lack thereof, caused the court to act
without reference to any guiding rules or principles or to act arbitrarily or
unreasonably.  In re T.W.E., 217 S.W.3d 557, 559 (Tex. App.—San Antonio
2006, no pet.); see also Baltzer, 240 S.W.3d at 475. There is no abuse
of discretion so long as some evidence of a substantive and probative character
exists to support the trial court’s decision.  In re T.J.L., 97 S.W.3d
257, 266 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Conversely, a trial court
abuses its discretion when there is no evidence to support its decision.  See
In re T.L.S., No. 02-08-00238-CV, 2009 WL 976007, at *5 (Tex. App.—Fort
Worth Apr. 9, 2009, no pet.) (mem. op.).

An appellate court will sustain a no evidence point
when (1) the record discloses a complete absence of evidence of a vital fact,
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact, (3) the evidence offered to
prove a vital fact is no more than a mere scintilla, or (4) the evidence
establishes conclusively the opposite of a vital fact.  See Heiskell
v. Kendrick, No. 14-06-00972-CV, 2007 WL 3072002, at *2 (Tex. App.—Houston
[14th Dist.] Oct. 23, 2007, no pet.) (mem. op.).  In reviewing the legal
sufficiency of the evidence, we consider only the evidence and inferences
tending to support the trial court’s finding, disregarding all contrary
evidence and inferences.  In re P.M.B., 2 S.W.3d 618, 621–22 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).

Statute

“Chapter 156 modification suits raise . . . policy
concerns such as stability for the child and the need to prevent constant
litigation in child custody cases.”  In re V.L.K., 24 S.W.3d 338, 343
(Tex. 2000).  To prevail on her petition to modify the parent-child
relationship, Carranza had to establish that (1) modification would be in
A.A.’s and J.A.’s best interest and (2) “the circumstances of the child, a
conservator, or other party affected by the order [had] materially and
substantially changed” since the date of the rendition of the 2005 divorce
decree.  See Tex. Fam. Code Ann. § 156.101(a)(1)(A).  

Material and Substantial Change

In issue one, Anderson contends the evidence was
legally and factually insufficient to support a finding of a material and
substantial change in circumstances that would justify a change in
conservatorship.  A prior custody decree is res judicata of the best interests
of the child regarding conditions existing at the time of the prior decree.  In
re C.Q.T.M., 25 S.W.3d 730, 735 (Tex. App.—Waco 2000, pet. denied).  If the
moving party does not establish a material and substantial change in
circumstances from the date of the custody order she seeks to modify, the trial
court must deny the petition.  In re A.L.E., 279 S.W.3d 424, 428 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).  

In deciding whether a material and substantial change
of circumstances has occurred, a trial court is not confined to rigid or
definite guidelines.  Id.  Instead, the court’s determination is
fact-specific and must be made according to the circumstances as they arise.  Id. 
Nevertheless, “[t]o prove that a material change in circumstances has occurred,
the petitioner must demonstrate what conditions existed at the time of the
entry of the prior order as compared to the circumstances existing at the time
of the hearing on the motion to modify.”  Zeifman v. Michels, 212 S.W.3d
582, 589 (Tex. App.—Austin 2006, pet. denied), quoted in A.L.E., 279
S.W.3d at 429.  Circumstantial evidence may establish changed circumstances.  A.L.E.,
279 S.W.3d at 429.

In the 2005 divorce decree, the court stated that,
“based on the history during the temporary orders wherein supervised access was
agreed to by and between the parties,” it found appointment of Anderson and
Carranza as joint managing conservators was not in the best interest of the
children.  The court also stated that, “having considered the testimony of [A.A.]’s
therapist,” it found supervision of Carranza’s periods of possession or access
to the children through SAFE was in the children’s best interest.

Evidence at the 2009 hearings indicated the following
conditions existed at the time of the 2005 divorce decree:  (1) Carranza had
been in a serious automobile accident and was “totally disabled,”[10] (2) she had borne
a child with her then boyfriend (present husband), (3) she was living with the
boyfriend, (4) she was pregnant with another child, and (5) her grandmother was
supporting her.

In her petition, Carranza did not allege what
specific circumstances had changed since the 2005 divorce decree.  Carranza,
however, testified her material changes of circumstances were her stability and
her family.  She further testified she had been married for three years and had
been together with her husband for five years.  She and her husband had two
children together, and she was also raising her husband’s child from a former
relationship.  They had a four-bedroom, two-bath house, and the house payment
was current. Carranza also described herself as being in perfect health in
contrast to her condition in 2005.

In light of the original decree and the policies
underlying Chapter 156, we conclude this testimony does not constitute evidence
of material and substantial changes dictating a change in conservatorship.  See
P.M.B., 2 S.W.3d at 622; Files v. Thomasson, 578 S.W.2d 883, 884–85
(Tex. Civ. App.—Houston [14th Dist.] 1979, no writ); see also Ramos v. Ramos,
683 S.W.2d 84, 86 (Tex. App.—San Antonio 1984, no writ) (holding facts father
had remarried, his new wife was pregnant, and they had moved into a new house
were neither material nor substantial changes); Belford v. Belford, 682
S.W.2d 675, 676 (Tex. App.—Austin 1984, no writ) (stating that remarriage of
both parties and mother’s living in another state did not constitute material
and substantial change); Heiskell v. Heiskell, 412 S.W.2d 774, 776 (Tex.
Civ. App.—Amarillo 1967, no writ) (holding facts plaintiff had remarried and
had a home for the child were not sufficient to establish material and
substantial change).[11]
 

Carranza also referred to Anderson’s having moved in
with his girlfriend as a change in circumstances.  Without more, we do not see
how this circumstance constitutes evidence of material and substantial changes
dictating a change in conservatorship.  See Short v. Short, 354 S.W.2d
933, 936 (Tex. 1962) (“A showing of only slight change of conditions is not
sufficient grounds to change custody of children.”).

Finally, when asked why she thought increasing her
access was appropriate at this time, Carranza testified, “I’m an excellent
mother.”  This conclusory statement is not competent evidence of changed
circumstances or best interests.  See Knowles v. Grimes, 437 S.W.2d 816,
818 (Tex. 1969) (holding stipulation by child’s paternal aunt and uncle, who
had been granted custody by divorce decree, that mother and stepfather of child
were good parents and child was happy and adjusted child in their home and that
mother and stepfather had best interest and welfare of child at heart did not
show materially changed circumstances and conditions such as would warrant
award of custody of child to mother); Vazquez v. Vazquez, 292 S.W.3d 8,
85 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding, in review of
divorce decree, wife’s statements she had signed decree and thought
conservatorship was in best interests of children were conclusory and did not
rise to level of competent evidence trial court could use to determine best
interest of children); In re T.W.E., 217 S.W.3d at 560 (holding, in
review of modification order, father’s “mere agreement” he saw no problem with
his serving as joint managing conservator was “too conclusory to amount to any
evidence”).

For the preceding reasons, we conclude Carranza
presented no evidence to support a finding that “the circumstances of the
child, a conservator, or other party affected by the order [had] materially and
substantially changed” since the date of the rendition of the 2005 divorce
decree.  See Tex. Fam. Code § 156.101(a)(1)(A).  Accordingly, we sustain
Anderson’s first issue.

Conclusion

            Having sustained
Anderson’s first issue, we reverse the order of the trial court and render
judgment that Carranza’s motion to modify the parent-child relationship be
denied.  Having sustained Anderson’s first issue, we need not address his
second issue.  See Tex. R. App. P. 47.1.

 

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

Panel consists of Justices
Brown, Boyce, and Jamison.

 

 









[1] Both parties refer to the
divorce as occurring in February 2005.  The decree in this court’s record shows
a signature date of April 15, 2005.





[2] J.A. was born before the
1998 marriage; however, his paternity was established in 1997. The paternity of
a third child, C.C., born during the 1998 marriage, was determined to be that
of Carranza’s present husband and not Anderson.





[3] SAFE is a project of the
Victim Assistance Center.





[4] See Tex. Fam. Code
§§ 153.312–.317.





[5] As of March 11, 2009, the
live pleading was Carranza’s second amended petition.





[6] Carranza and Mary
Timmons, the SAFE executive director, testified on both March 11 and July 30. 
The other witnesses testified only on March 11.

On appeal Carranza states she does not substantially
disagree with Anderson’s recitation of the facts adduced at those hearings.  After
independently reviewing the record, we largely adopt his statement of facts as
augmented by facts gleaned from our review.





[7] One of the children was
her husband’s through a prior relationship.  The other two were hers and her
husband’s.





[8] According to Carranza,
she did not have access to her husband’s bank account.





[9] Thompson testified on
March 11, 2009.  See note 6 above.





[10] Anderson contends there
is no evidence the accident occurred before the divorce in spring 2005. 
Although Carranza stated by affidavit that the accident occurred on March 29,
2004, it does not appear that this affidavit was admitted at the hearings.





[11] These cases were decided
under predecessors to the present section 156.101.  Nevertheless, insofar as
the predecessor statutes required findings of material and substantial change,
they inform our analysis under the current statute.