

**NUMBER 13-19-00057-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**IN THE INTEREST OF K.L.M. and J.A.M., Children**

**On appeal from the County Court at Law No. 5
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Mother appeals the trial court's final order in appellee Father's suit to modify the parent-child relationship.[1]  By three issues, Mother argues that the trial court abused its discretion by:  (1) ordering Mother and Father to exchange the children in Alice, Texas instead of their respective homes; (2) removing the Soberlink monitor device

---

[1] To protect the identity of the children, we refer to the children and their parents using aliases.  *See* TEX. R. APP. P. 9.8(b).

requirement; and (3) granting Father unsupervised overnight access to the children. We affirm.

## I. BACKGROUND

Mother and Father were married in May 2009. They had two children together during their marriage: their daughter K.L.M. was born in 2013 and their son J.A.M. was born in 2015. During their marriage, they lived in Von Ormy, Texas. In August 2015, shortly after J.A.M.'s birth, Mother moved to McAllen, Texas and filed for divorce. The trial court entered a final divorce decree on March 28, 2017. The final divorce decree, which was based on a mediated settlement agreement between Mother and Father, required Father to utilize a Soberlink alcohol monitoring device before and during each visitation period with the children. The decree also stated that Father's visitation with the children should occur in Hidalgo County and that it should be supervised. The decree also ordered that Father would be allowed unsupervised visits starting in August 2018 when J.A.M. turned three.

However, in July 2017, Mother filed a petition to modify the parent-child relationship seeking to postpone Father's unsupervised visits with the children. According to Mother, it would not be in the best interest of the children to have unsupervised visits with Father because K.L.M. was demonstrating significant speech delays and J.A.M. was experiencing allergies and lacked emotional maturity. Additionally, Mother asserted that Father had failed a Soberlink alcohol test.

In August 2017, a temporary restraining order was signed to prevent Father from having overnight visitation with the children. Later the same month, Father filed a counter petition to modify the parent-child relationship. Father requested that he and Mother be

2

granted standard visitation pursuant to the Texas Family Code. He also requested that the parties meet at a midpoint to exchange the children at the beginning and ending of possession periods instead of exchanging children at their respective homes. At the time, Father lived in Von Ormy and Mother resided in McAllen. Father averred that the requested modifications were in the best interests of the children and that the circumstances of the children and the parties had materially and substantially changed since the divorce decree was issued.

In November 2017, the trial court ordered a mental evaluation of Father. Mother was ordered to arrange an appointment with a psychiatrist for Father but failed to do so. At a hearing in February 2018, Father notified the court that Mother had failed to arrange a mental evaluation appointment for him even though he had made himself available on numerous occasions. The trial court reiterated its instruction that Mother quickly arrange a mental evaluation for Father. In April 2018, based on a review of Father's mental health evaluation, the trial court ordered that Father be allowed to have unsupervised overnight visitation.

In August 2018, a final hearing was held on the dueling petitions to modify the parent-child relationship. The trial court's final order, which was signed in November 2018, granted standard unsupervised visitation to both parents, omitted the Soberlink monitoring device requirement, included a provision on electronic and video communication, and required that Mother and Father meet in Alice, Texas to exchange possession of the children.

In December 2018, Mother filed a motion to modify judgment or for new trial. In January 2019, the trial court denied her motion. This appeal followed.

3

## II. ANALYSIS

In three issues, Mother argues that the trial court abused its discretion in modifying the parent-child relationship by: (1) ordering the exchange of the children for visitation purposes to occur in Alice, Texas; (2) deleting the Soberlink monitoring device condition; and (3) granting Father overnight unsupervised visitation.

### A. Standard of Review and Applicable Law

We give wide latitude to a trial court's decision on custody, control, possession, and visitation matters. *See In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.); *see also In re L.G.K.S.*, No. 12-18-00178-CV, 2019 WL 4462693, at *2 (Tex. App.—Tyler Sept. 18, 2019, no pet.) (mem. op.). We will only disturb the trial court's judgment when the record as a whole demonstrates that the court abused its discretion. *See In re H.N.T.*, 367 S.W.3d at 903. "In family law cases, the abuse of discretion standard of review overlaps with traditional standards of review. As a result, legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion." *Id.* Thus, to determine whether the trial court abused its discretion, "we consider whether the trial court had sufficient evidence upon which to exercise its discretion and erred in its exercise of that discretion." *Id.*

"In an effort to ensure stability and continuity for children, Texas law imposes significant hurdles before a conservatorship order may be modified." *Id.* at 904 (citing *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Specifically, a trial court may only modify a conservatorship order if modification would be in the child's best interest and "the circumstances of the child, a conservator, or other

4

party affected by the order have materially and substantially changed" since the previous order. TEX. FAM. CODE ANN. § 156.101. Examples of material changes include: "(1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody." *In re A.L.E.*, 279 S.W.3d at 429.

**B. Setting Alice, Texas as the Exchange Location was not an Abuse of Discretion**

In her first issue, Mother argues that the trial court abused its discretion in ordering Mother and Father to exchange the children in Alice. Regarding the dropping off and picking up of children, § 153.316 of the Texas Family Code states the following terms shall apply in a standard possession order, absent a mutual agreement to the contrary:

> the court shall order the following general terms and conditions of possession of a child to apply without regard to the distance between the residence of a parent and the child:
>
> > (1) the managing conservator shall surrender the child to the possessory conservator at the beginning of each period of the possessory conservator's possession at the residence of the managing conservator;
> >
> > . . .
> >
> > (3) the possessory conservator shall be ordered to do one of the following:
> >
> > > (A) the possessory conservator shall surrender the child to the managing conservator at the end of each period of possession at the residence of the possessory conservator; or
> > >
> > > (B) the possessory conservator shall return the child to the residence of the managing conservator at the end of each period of possession.

5

TEX. FAM. CODE ANN. § 153.316(1), (3)(A), (B). However, § 153.316 only guides the creation of the original possession order. The trial court's order that Mother is appealing was based on petitions to modify an existing possession order, meaning § 156.101, not § 153.316, is the applicable section. *See Weldon v. Weldon*, 968 S.W.2d 515, 517 (Tex. App.—Texarkana 1998, no pet.) ("[Appellant's] reliance on Section 153.316 and its mandatory language is misplaced. The trial court's decision was on a motion to modify an *existing* possession order, not an *initial* possession order. Therefore, Section 156.301[, which has been recodified to § 156.101,] . . . is the appropriate section under these circumstances.").

Under § 156.101, the court may modify the possession order as long as the modification would be in the best interest of the children and the circumstances of Mother, Father, or the children have changed. TEX. FAM. CODE ANN. § 156.101. Concerning the element of changed circumstances, "[o]ne party's allegation of changed circumstances of the parties constitutes a judicial admission of the common element of changed circumstances of the parties in the other party's similar pleading." *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.). Thus, Mother's allegation of changed circumstances in her original motion to modify the parent-child relationship constituted a judicial admission of changed circumstances for purposes of Father's counter-petition. *See id.*

Mother argues that ordering the exchange of the children to occur in Alice was not in the best interest of the children; instead, Mother argues that the trial court's decision was purely punitive in nature. In January 2019, when the trial court denied Mother's motion to modify judgment or for new trial, the trial court declared:

6

Based on the evidence presented and the argument of counsel and [Father], [Mother] has filed misdemeanor criminal charges against [Father] in another Court of this county. Pending the charges there, that Court has ordered as a condition of [Father's] bail that [Father] have no contact with the children. [Father] testified that he has had no contact with the children since last July. This Court is not aware of what evidence was presented in the other Court. But, if the evidence is identical to or close to the evidence presented in this case, this Court does not see any basis prohibiting [Father] to exercise his visitation rights with his children. Accordingly, this Court finds and concludes that [Mother's] filing criminal charges against [Father] was done to circumvent the Orders of this Court. Accordingly, setting the exchange point at a half-way point is appropriate.

However, at the final hearing on the motion to modify, the trial court heard testimony that could support the trial court's conclusion that meeting in Alice to exchange the children was in the children's best interests. First, Father contended that the original divorce decree stipulated that Mother was to drop off and pick up the children in Alice for summer visitations. Also, Father testified as follows:

And [Mother] does not allow me to—I have not exercised—first of all, I have not exercised the right to electronically communicate with my children since it became very aware that [Mother], through her writing in an e-mail saying that she would not allow me to communicate with the children via Skype or video-teleconference, which is allowed. I have not exercised that right, so I took the phone back because then I wasn't able to talk to my daughter anymore on the phone. She was always consistently finding reasons.

This is—it is not—they have not shown one case where the children have been endangered, harmed, emotionally, physically, not one piece of evidence to show that.

My children and I, we have a great relationship and it's only being impeded by [Mother]. They're doing everything in their power to prevent me and the children and myself to have a strong relationship.

. . .

Furthermore, if allowed to have standard visitation with the children, we have previously agreed to meet in Alice, Texas, because it's halfway. I think that is best.

….

7

Your Honor, I would like to—if standard visitation is granted, for us to meet in Alice, Texas, on mutual ground. It's a little more than halfway for myself. . . . I believe it's in the best interest of the children to have me in their lives and vice versa. And every—it's—many times I'm at a loss of words for the actions that [Mother] continuously does to prevent that relationship. In two and a half years of going through every hoop that I've been told to do—and no offense to any judge. I've done everything, every single thing I've been ordered to do to show who I am as a father. And for that to be taken away from me, from the children, it's just absolutely wrong, in my opinion.

Mother asserted that it would be impossible for her to get the children to Alice because of her work obligations. The following exchange occurred:

[Mother's Attorney]: She's going to be doing practicum, Your Honor. She's going to be obligated to be at a facility to get her master's degree. She's working on a master's in clinical psychology. And what she does is she works as needed through the year, but her practicum would require her to be there all day long. She can't have the children in San Antonio at 6 o'clock on Friday. It's impossible when she's working.

[Trial Court]: He's asking that they meet in Alice.

[Mother's Attorney]: Well, she can't have them in Alice at 6 o'clock if she's working till 5:00.

[Father]: Your Honor, I'll change it to 7:00. I mean, I'm willing to move things around, you know, to accommodate her. But for two and a half years, I've taken an entire financial brunt [sic] burden of everything. And I'm just asking to meet in the middle. I mean, if she needs 7 p.m., I'll do 7 p.m. on Friday night. It's just—I don't think it's really that big of a deal for them to be fighting about just for us to meet in the middle. We're talking one time a month, you know, that she has to go up there Friday and then on Sunday to Alice, Texas, and for the long vacations. I mean, she's not doing it every other weekend.

[Mother's Attorney]: The decree provided that she would meet him once in the summer. She wasn't obligated under the decree to

8

|                  | be doing all the driving. And we respectfully request that since he doesn't have any other obligations— |
|------------------|---|
| [Trial Court]:   | Well, on a matter of fairness, this will be once a month, and I will order that for that weekend visitation that the exchange of the children be in Alice. |

We cannot say that the trial court acted arbitrarily or without reference to guiding principles. *See In re H.N.T.*, 367 S.W.3d at 903. The record as a whole reflects that the trial court heard testimony concerning the best interests of the children in seeing their father more often. Therefore, we conclude that the trial court did not abuse its discretion in setting the exchange location in Alice. *See id.* We overrule the first issue.

**C. Deletion of the Soberlink Requirement was not an Abuse of Discretion**

In her second issue, Mother argues that the trial court abused its discretion in removing the Soberlink condition. Both the mediated settlement agreement and the final divorce decree required Father to submit to Soberlink sobriety testing twenty-four hours before the beginning of any possessory period with the children and twice during each possession period. This requirement was to last for five years from the date of the divorce. However, in its final order, the trial court removed the Soberlink testing condition, even though Father never requested that such condition be removed.

Mother asserts that the trial court abused its discretion because under the Texas Rules of Civil Procedure, the judgment must "conform to the pleadings" of the parties. TEX. R. CIV. P. 301. However, "[i]n child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance." *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Peck v. Peck,* 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) (holding that a trial court can place conditions on visitations even when such conditions were not

9

requested in the pleadings); *see also Cain v. Cain*, No. 14-07-00115-CV, 2007 WL 4200638, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, no pet.) ("[T]he trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should not be hampered by narrow technical rulings."). Thus, it does not matter that Father did not specifically request the deletion of the Soberlink testing requirement. The trial court may unilaterally impose conditions not requested and does not abuse its discretion as long as it does not act arbitrarily. *See In re H.N.T.*, 367 S.W.3d at 903.

Mother testified that maintaining the Soberlink requirement was in the children's best interest because it assured that Father was sober before and during visitation periods. Father testified that he already utilizes a portable breathalyzer machine twice a day for a different court and that he has had no violations. Mother attempted to introduce evidence of an alleged positive test result on the Soberlink that occurred on April 7, 2018. However, Father testified as follows:

> For my next exhibit, Your Honor, I want to show the breathalyzer test that [Mother] brought into question.
>
> On—it was a false positive, Saturday, April 7th, 2018, at 9:40 a.m., had a BAC of a 0.031. A mandatory test had to be completed. And that was completed at 9:56 a.m., and it was confirmed as 0.000.
>
> It was a false positive due to having hand sanitizer on my hands prior to taking the test. And as soon as [Mother] got a copy of the test result coming back as 0.000, Your Honor, she immediately dropped off the children to me. So this shows that she was not concerned about any alcohol in my system.

Ultimately, the trial court held:

> With regard to the motion for enforcement, . . . [t]he allegation that he tested positive 0.031 on Soberlink, I'm convinced is a false positive. Subsequent testing that resulted in a 0.000 shows he—that [Father] did not consume any alcoholic beverages.

10

The respondent has testified that he has continued his psychological and psychiatric treatment through various VA programs. And so based on that evidence, I find that he has not violated those orders of the Court.

Thus, there was some evidence before the court that the Soberlink testing requirement was no longer in the best interests of the children. We conclude the trial court did not abuse its discretion in removing the Soberlink testing requirement. *See id.* We overrule Mother's second issue.

**D. Granting Overnight, Unsupervised Visitation was not an Abuse of Discretion**

In her third issue, Mother argues that the trial court erred by granting Father overnight visitation "against the great weight of the evidence and against the interest of the children." Mother makes this assertion based on the testimony of Dr. Maria Cristina Quilantan-Diaz, the children's counselor. Quilantan-Diaz testified that K.L.M. is "very attached to her mom." She also opined that K.L.M. has a semi-significant speech delay. Regarding J.A.M., Quilantan-Diaz opined that he is not very developed emotionally and he can't verbalize his wants or needs. Thus, in her opinion:

> It would be very difficult and traumatic for them to be away from their mother at night. At this—at the age that they have, and being that they are not at their development, because they cannot communicate verbally, and because they are not able to convey their emotions, or their needs or their wants.

Father argues that he had been granted unsupervised, overnight visits with the children in the original divorce decree. The trial court had also granted Father unsupervised overnight visits in a temporary order signed on May 8, 2018. Mother maintained that overnight visits with Father were not in the best interests of the children because Quilantan-Diaz had instigated a CPS investigation against Father. Quilantan felt compelled to file a CPS report because after spending the night with Father on one

11

occasion, K.L.M. put a banana in her panties and exclaimed, "now I look like daddy."

However, the CPS letter indicated that the purported allegations of sexual abuse had

been ruled out.  The trial court also received a psychological evaluation of Father from

Richard Theis, which stated:

> [Father] voluntarily submitted to a psychological evaluation with Modern
> View Clinical and Forensic Services in 2016, for the purposes of displaying
> that he was emotionally and mentally capable of taking care of his children.
> During the course of this evaluation, [Father] was interviewed twice and was
> studied at one of his visits with his children.
>
> Modern View determined that [Father] was properly oriented, cooperative,
> and capable. His memory was determined to be intact, and he displayed no
> evidence of delusions or paranoia.  He was found to not display any
> symptoms of mental distress that would negatively impact his ability to
> parent his children, and the evaluation indicated no risk facts to himself or
> his children.  It noted that, while he does have mental health diagnoses,
> they are well managed, and he has taken proper responsibility for their
> management.
>
> In addition, [Father] was seen with his children.  The examiner, Norma
> Villanueva, recorded that [Father] provided support to both of his children
> equally and has properly "child-proofed" his house.  In addition, she
> reported that both of [Father's] children are positively bonded with him and
> seek him out without reservation.  She saw no evidence of coaching or
> coercion by [Father].
>
> Modern View recommended that he "be allowed full access to his children
> without reservation," and begin standard visitation.  It found that, while
> several risk factors were present in the past, [Father] has adequately
> litigated [sic] them, and reported "Mr. Father and his lifestyle do not pose
> any risk for his young children."  It recommended that [Mother] and [Father]
> form a positive co-parenting bond, particularly because the children's youth
> makes the formation of proper parental bonds crucial.

Given the evidence in the record, the trial court possessed "sufficient evidence

upon which to exercise its discretion."  *In re H.N.T.*, 367 S.W.3d at 903.  Although there

was some evidence that it would be "traumatic" for the children to be separated from their

mother, there was also evidence that it was in the children's best interests to grant Father

12

overnight, unsupervised visits.  Therefore, we conclude the trial court did not abuse its discretion in granting Father unsupervised overnight visitation with his children.  We overrule Mother's third issue.

## III. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed the
23rd day of January, 2020.