**Affirmed, in Part, and Reversed and Remanded, in Part, and Memorandum Opinion filed January 28, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00037-CV

---

## IN THE INTEREST OF M.L. AND E.L., CHILDREN

---

**On Appeal from the 310th District Court
Harris County, Texas
Trial Court Cause No. 2009-25562**

---

## MEMORANDUM OPINION

Walter Lawrence Doyle ("Father") appeals from a final order in a suit affecting the parent-child relationship. In three issues, Father contends the trial court abused its discretion in finding that he was intentionally unemployed and underemployed for purposes of establishing his child-support obligation; that the trial court abused its discretion in applying the statutory child-support guidelines to his earning potential instead of his actual earnings; and that the trial court erred in awarding Stacey Belinda Mitchell's ("Mother") attorney's fees and costs. We conclude the attorney's fee award was not supported by evidence of reasonableness

and necessity; therefore, we reverse and remand the portion of the trial court's final order regarding attorney's fees. We otherwise affirm.

## I.  BACKGROUND

Father and Mother are the parents of two children. In April of 2010, an Agreed Order Adjudicating Parentage was entered, establishing conservatorship, the respective rights and duties of the parties, geographic restrictions as to the residence of M.L., and setting Father's monthly child-support obligation for M.L. at $1,500.00 per month.[1] At the time, Father was employed as a geologist at BP North America.

The couple separated after the birth of M.L., but rekindled their relationship and, in late 2014, Mother was pregnant with the couple's second child. The couple made plans to marry and move to Oklahoma, where Father had secured a job with Chesapeake Energy that paid "a little more" than his position with BP. Father also took advantage of a voluntary layoff program offered by BP; as a result, he received ten months' salary in a lump sum. At the time, Father's salary with BP was approximately $147,000 per year. However, at some point after his layoff in April 2015, the couple's marriage plans fell apart because they could not agree on the terms of a prenuptial agreement. On May 4, 2015, E.L. was born. Thereafter, Father declined the job at Chesapeake Energy because he was unwilling to move to Oklahoma by himself and leave his children behind. On June 8, 2015, Father filed a petition to modify the parent-child relationship and requested modification of the

---

[1] According to Appellee's Brief, Father was Petitioner in the 2009 suit to establish paternity, support, and custody arrangements for M.L., the couple's first child; this pleading is not in our record.

2

Agreed Order Adjudicating Parentage to establish paternity of E.L, as well as custody and support for both children.[2]

In September 2015, the trial court entered agreed temporary orders, which included Father's agreement to pay $2,137.50 in monthly child support for both children, based on the lump sum he received from BP. Trial was set for January 5, 2016, but the case was reset.

On January 8, 2016, Father sought modification of the Temporary Orders, seeking both a decrease of his child-support obligation based on his unemployed status and a standard possession order in regard to his children. On February 10, 2016, the court heard the motion, which was denied. Father did not stay current on his child-support payments, and on January 11, 2016, Mother filed a motion for enforcement by contempt; this motion was amended five times before trial. Mother filed a counterpetition seeking modification of conservatorship of the children, the continuation of the current amount of child support of $2,137.50, and alleged intentional unemployment and underemployment, requesting a child support amount commensurate with Father's abilities.

On September 4, 2018, the trial court signed agreed amended temporary orders which incorporated the parties' interlocutory settlement of issues related to child custody and access. Additionally, the amended temporary orders reduced Father's responsibility for child support to $1,100 per month pending trial.

A bench trial was held three weeks later, on September 25, 2018. The trial court heard testimony from Mother and Father on the issue of child support, and from Mother's attorney on the issue of attorney's fees. The trial court found that

---

[2] Tex. Fam. Code § 101.032(a). The 310th District Court of Harris County is the court of continuing, exclusive jurisdiction. *See* Tex. Fam. Code §§ 155.001 155.002–.003.

Father was "intentionally and purposefully unemployed and underemployed" and rendered judgment that Father pay $2,137.50 per month in child support, as well as $77,244.43 in attorney's fees and costs incurred by Mother's attorney. Judgment was entered on October 9, 2018.[3] This appeal followed.

## II. ANALYSIS

On appeal, Father raises the following issues:

1. The trial court erred and abused its discretion when it found that Father was intentionally and purposefully unemployed or underemployed.

2. The trial court erred and abused its discretion when it applied the child support guidelines to Father's "earning potential" instead of his actual income.

3. The trial court erred when it ordered Father to pay attorney's fees and costs in the amount of $77,244.43.

All three of Father's issues are reviewed under an abuse of discretion standard. *Iliff v. Iliff*, 339 S.W.3d 78 (Tex. 2011); *In re K.A.M.S.*, 583 S.W.3d 335, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.)(attorney's fees). Because Father's first two issues rely on application of the same Family Code statute, we will address them together.

### A. DETERMINATION OF CHILD SUPPORT

In his first and second issues, Father asserts there is "absolutely no evidence" supporting the trial court's application of Texas Family Code section 154.066 to the facts of this case. Because there was no evidence, he argues, the

---

[3] Father timely requested findings of fact and conclusions of law under Rule 296 but failed to timely remind the trial court of his request. *See* Tex. R. Civ. P. 297. Father does not complain on appeal about the lack of findings and so we do not consider the issue.

trial court abused its discretion in setting his child-support obligation at more than half his monthly net salary.  We disagree.

### 1.    STANDARD OF REVIEW

Trial courts have wide discretion with respect to support matters.  *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  We therefore review the trial court's determination of Father's child-support obligation for an abuse of discretion.  *Gillespie*, 644 S.W.2d at 451; *In re A.L.E.*, 279 S.W.3d at 427.  The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).  The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision.  *In re A.L.E.*, 279 S.W.3d at 428; *Worford*, 801 S.W.2d at 109.

Under this abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error, but instead are relevant factors to determine if the trial court abused its discretion.  *In re A.L.E.*, 279 S.W.3d at 427; *see also Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).  When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not.  *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).  We indulge every reasonable inference that would support the challenged finding.  *Gunn*, 554 S.W.3d at 658.  Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review.  *Id*.  We will uphold the trial court's judgment on any legal theory supported by the record.  *Worford*, 801 S.W.2d at 109.

In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *Taylor v. Meek*, 154 Tex. 305, 276 S.W.2d 787, 790 (1955); *In re A.L.E.*, 279 S.W.3d at 427. As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination and will not substitute its judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992); *Buller*, 806 S.W.2d at 226("[T]he court of appeals may not reverse for abuse of discretion merely because it disagrees with a decision by the trial court ...").

## 2. GOVERNING LAW

In the case of child support, the trial court's broad discretion is guided by the parameters for child support provided by the Texas Family Code. *Iliff*, 339 S.W.3d at 78; *see also* Tex. Fam. Code §§ 154.121–.123). The parties agree that the birth of E.L. was a "material and substantial change" and that modification of the prior order was in the best interests of the children. Tex. Fam. Code § 156.401(a)(1)(A)(trial court may modify a prior child-support order if: "the circumstances of the child or a person affected by the order have materially and substantially changed" since rendition). Further, Father does not dispute that the trial court's order fits the Code's child-support guidelines *if applied to his earning potential*, measured by his BP salary. Tex. Fam. Code § 154.066. Instead, he contends there is no evidence supporting the application of section 154.066 to the facts of this case.

The trial court has broad discretion in setting child support, and in increasing or decreasing payments. *See Iliff*, 339 S.W.3d at 78. The trial court's child-

6

support decision will not be overturned unless a clear abuse of discretion is shown. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993).

Under the Family Code, if Father's income is "significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." Tex. Fam. Code § 154.066(a). The court must engage in a fact-intensive, case-by-case determination to decide whether child support should be set based on earning potential, as opposed to actual earnings. *Iliff*, 339 S.W.3d at 82. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Id.* Any finding of intentional unemployment or underemployment must be supported by the record. *Id.*

### 3. APPLICATION

The trial court found that Father was intentionally unemployed or underemployed and set his monthly child-support payment at $2,137.50 per month. Tex. Fam. Code § 154.066(a). Given the standard of review, the question becomes whether the trial court's determination is supported by the record. *Iliff*, 339 S.W.3d at 82.

At trial, Father testified that, after his marriage plans fell through, he first contacted BP but was unable to get his old job back. He started training for his real estate license but did not finish because his income would be commission-based and thus unreliable. Father testified he was unable to find a job in the oil industry until July 2017, when he was hired by ALS Empirica to "steer" horizontal wells. That job paid Father $26,824.48 over six months before he was laid off in December 2017. In February 2018, he began working for Terra Guidance LLC,

7

where he was employed in a similar position at a rate of $5,500 per month. Tax returns and related documents provided by Father showed adjusted gross income of $232,911 in 2015 and $135,154 in 2016 and gross income of $26,824 in 2017 and $5,500 per month for April-August 2018.[4]

In her testimony, Mother contended that Father could find employment comparable to his previous employment at BP if he tried. She based that opinion on her own employment in the energy industry and on government statistics on employment for geologists and geoscientists. She also testified that she had signed up on a branded employment website in 2015 and had been receiving alerts about jobs fitting Father's qualifications ever since.

Mother contended Father was not interested in finding comparable employment. She testified that in 2015, she forwarded the aforementioned job alerts to Father until he told her to stop. She also recalled Father's testimony at the 2015 temporary orders hearing that "he was not looking for a job, that he was playing video games and working on his court case to get custody." She said Father had produced no documentation of his job search in 2015 and 2016 in connection with the case, although those documents were requested in discovery. She also testified he did not tell her when he got the job with ALS Empirica in 2017.

The trial court heard testimony that in 2015, Father had one job with BP paying $147,000.00 per year and a job offer with Chesapeake Energy paying "a little more" than the BP job. The court also heard evidence that Father voluntarily separated from BP and did not accept the Chesapeake Energy job offer. The court could have credited this testimony as establishing Father's earning potential as well as some evidence that Father chose to become unemployed or underemployed.

_____

[4] 2016 income consists solely of withdrawals from Father's retirement accounts.]

Additionally, the trial court heard testimony that Father held an advanced degree and had ten years' experience with a major oil company, but that no oil company was hiring at his previous pay grade. By contrast, the trial court heard testimony that at the temporary orders hearing in 2015, Father testified he was not looking for a job, but "playing video games and working on his court case to get custody." While Father testified to a vigorous job search, Mother testified she had never seen documentation of that job search, despite seeking those documents in discovery. Further, the trial court could have credited Mother's testimony that when she sent Father job search leads, he told her to stop. The trial court could reasonably disregard Father's testimony and conclude there had been no real job search. Seen in this light, the trial court could have credited Mother's testimony as establishing that Father could have found a job comparable to his employment at BP had he tried beginning in 2015.

Mother also argues the trial court's child-support order could be supported on an independent basis – namely, access to other financial resources. Tex. Fam. Code § 154.062(b). While pleading poverty, Father would not disclose how much he paid to the four attorneys which have represented him in these proceedings, or where that money came from to pay them. His response – "I don't remember. I paid when the bills came" – could be interpreted by the trial court as countering Father's testimony of the dire circumstances created by his child-support obligation. These records, along with Father's job-search records, were requested in discovery but not provided before trial. Father admitted to accepting money from his own father but refused to disclose how much. Father also admitted to owning a single-family residence as well as a quarter-acre lot in Liberty County. The trial court could reasonably have concluded that Father had other, undisclosed resources which could be employed in support of his children.

9

On this record, we hold the trial court did not abuse its discretion in its child support determination.

We overrule Father's first and second issues.

## B.     ATTORNEY'S FEES

In his third issue, Father challenges the attorney's fees awarded to Mother. Father argues that Mother did not sufficiently prove the reasonableness of her attorney's fees.  Father may raise this insufficiency-of-the-evidence argument for the first time on appeal.  *See* Tex. R. Civ. P. 324(a), (b); Tex. R. App. P. 33.1(d); *In re K.A.M.S.*, 583 S.W.3d at 349.

### 1.     STANDARD OF REVIEW

Trial courts have broad discretion to award attorney's fees in suits affecting the parent-child relationship.  Tex. Fam. Code § 106.002(a); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002).  "However, an award of attorney's fees against the opposing party must be supported by evidence that the fees are reasonable and necessary." *In re K.A.M.S.*, 583 S.W.3d at 349 (citations omitted).

### 2.     GOVERNING LAW

Recently, the Supreme Court clarified that "we intended the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497–98 (Tex. 2019).  Generally, legally sufficient evidence to establish a reasonable and necessary fee must include a description of the particular services performed, the identity of each attorney who performed each service, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See id.* at 497–98, 501–02, 502–03.  Multiplying the reasonable hourly rate by

hours reasonably necessary to accomplish necessary tasks yields a base lodestar figure, which in turn constitutes a presumptively reasonable and necessary fee for prosecuting or defending the prevailing party's claim through the litigation process. *Id.* at 498–502. The fact that a client agreed to a certain fee arrangement does not conclusively establish the reasonableness or necessity for fee-shifting purposes. *Id.* at 487–88 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

### 3. APPLICATION

Here, Mother's attorney testified in support of her request for fees and costs as follows:

> Judge, I've given counsel a copy of [Respondent's Exhibit 2] that is a listing of all of the attorney's fees that have been charged to my client less the amount that related to the enforcement and less the amount, the judgment, the 15,000-dollar judgment for the enforcement.
>
> This litigation has been going on since 2015. I've been Stacey's attorney throughout the entire time. Mr. Doyle has had a myriad of lawyers, good one this time; and the costs have been astronomical. My client has been charged to date a total of $77,244.43. There's -- and I've attached a copy of all of my invoices.

Exhibit 2 contains 65 pages of billing records from Respondent's attorney and staff, dating back to December 2015. The records show nine timekeepers, the tasks on which they worked, and the charges billed to Respondent. However, this exhibit fails to identify the time required to accomplish any single task. Further, seven of the nine timekeepers appearing in the billing records are not identified, by their billing rates or otherwise. At least one of these timekeepers was an attorney who billed for court appearances. While acknowledging the total bill was "astronomical," Mother's attorney presented no evidence that those costs were reasonable and necessary.

Because of these shortcomings, the evidence before the trial court "lacks the substance required to uphold a fee award" and thus is legally insufficient to support that award. *Rohrmoos Venture*, 578 S.W.3d at 504–05; *see also Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014)("[W]ithout any evidence of the time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request."). However, while the evidence presented was insufficient to support an award of attorney's fees, the evidence presented was sufficient to support a remand to the trial court for redetermination of attorney's fees. *Rohrmoos Venture,* 578 S.W.3d at 497 (citing *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017)).[5]

Father's third issue is sustained.

## III.   CONCLUSION

We reverse the portion of the trial court's final order regarding attorney's fees and remand the case to the trial court for further proceedings limited to Mother's attorney's-fee request. We otherwise affirm the trial court's final order.

/s/      Margaret "Meg" Poissant
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

---

[5] We note that *Rohrmoos*, which clarifies the applicability of the lodestar method to family law cases, was not decided until seven months after trial. 578 S.W.3d at 497–98. This fact supports remand in the interests of justice. *See* Tex. R. App. P. 43.3(b).