

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00410-CV

**IN THE INTEREST OF A.M.B.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00936
Honorable Kimberly Burley, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: October 23, 2024

AFFIRMED

Appellant A.C.S. challenges the trial court's order terminating her parental rights to her child, A.M.B. (born 2015).[1] She argues the evidence is legally and factually insufficient to support the trial court's finding that termination was in A.M.B.'s best interest. We affirm the trial court's order.

### BACKGROUND

In June of 2023, the Texas Department of Family and Protective Services removed A.M.B. from A.C.S.'s care due to allegations of neglectful supervision, physical abuse, and sexual abuse.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and her biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

At the time of A.M.B.'s removal, her primary caregivers were A.C.S. and A.C.S.'s mother. The Department obtained temporary managing conservatorship over A.M.B., placed her with a maternal aunt,[2] and filed a petition to terminate the parental rights of both A.C.S. and A.M.B.'s father, A.B. The Department created a family service plan requiring A.C.S. to "do parenting classes; a substance abuse assessment; a psychosocial assessment; individual counseling; a psychological evaluation; random drug testing; and to obtain stable housing and employment." The Department explained to A.C.S. that failure to comply with the plan could lead to termination, and she signed the plan. The Department ultimately pursued termination of A.C.S.'s parental rights.

Eleven months after removal, the trial court held a one-day bench trial at which A.C.S. appeared. The trial court heard testimony from three witnesses: Department caseworker Beatrice Hollins, A.C.S., and a CASA volunteer. The court also admitted A.C.S.'s service plan into evidence. On June 4, 2024, the trial court signed an order terminating A.C.S.'s parental rights pursuant to Texas Family Code section 161.001(b)(1)(N) and (O) and its finding that termination of A.C.S.'s parental rights was in A.M.B.'s best interest. A.C.S. appealed.[3]

**ANALYSIS**

A.C.S. challenges only the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in A.M.B.'s best interest. She does not challenge the sufficiency of the evidence to support the trial court's predicate findings under section 161.001(b)(1)(N) and (O). *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(N) (parent constructively abandoned child in Department's custody), (O) (parent failed to comply with court-ordered service

---

[2] A.M.B. was eventually placed with a different aunt, with whom she remained at the time of trial.
[3] The trial court also terminated A.B.'s parental rights. He is not a party to this appeal.

plan). Accordingly, we must accept those unchallenged findings as true. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied).

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *Id.* (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate A.C.S.'s parental rights and that termination was in the best interest of A.M.B. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the

finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### Best Interest

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[4] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[5] to determine a child's best interest. TEX. FAM. CODE ANN.

---

[4] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[5] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

§ 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing these factors, the court focuses on the best interest of the child, not the best interest of the parent. *In re A.K.*, 487 S.W.3d 679, 686 (Tex. App.—San Antonio 2016, no pet.).

A best-interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, we presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

### *Application*

A trial court conducting a best-interest analysis may consider "whether the child is fearful of living in or returning to the child's home." TEX. FAM. CODE § 263.307(b)(5). The court may also consider the desires of the child. *See Holley*, 544 S.W.2d at 371–72. Here, while eight-year-old A.M.B. did not testify at trial, the CASA volunteer testified that she "expresse[d] a lot of fear in the idea of encountering [A.C.S.] again, based off of what she has told us, the allegations of physical and sexual abuse that have happened in the home when she was with mom, and just the

treatment that she received there."[6] *See In re B.F.H.-J.*, No. 04-20-00461-CV, 2021 WL 111922, at *4–5 (Tex. App.—San Antonio Jan. 13, 2021, no pet.) (mem. op.) (affirming termination where evidence showed children "feared their father and desired to remain[] with their grandmother"); *In re C.M.C.*, 273 S.W.3d 862, 876–78 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (affirming termination where evidence showed children missed their mother but were afraid of her and did not want to live with her). The CASA volunteer further testified that A.M.B. had "been very consistent with what she has told us and has been very consistent with saying that she wants to continue to stay with" her current placement.

Caseworker Hollins also testified that A.M.B. wanted to stay in her current placement and that she did not want to visit or have contact with A.C.S. during this case. *See In re E.F.Z.*, No. 04-19-00169-CV, 2019 WL 4044030, at *4 (Tex. App.—San Antonio Aug. 28, 2019, no pet.) (mem. op.). While A.C.S.'s attorney suggested during closing argument that A.M.B. was not "mature enough to make that decision," this court has previously affirmed termination orders based on evidence regarding the wishes of children younger than A.M.B. *See In re C.S.D.*, No. 04-15-00504-CV, 2016 WL 413944, at *1, *4 (Tex. App.—San Antonio Feb. 3, 2016, no pet.) (mem. op.) (considering evidence of four-year-old's expressed wishes); *In re A.M.Y.*, No. 04-15-00352-CV, 2015 WL 6163212, at *1, *5 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.) (considering evidence of six-year-old's expressed wishes).

Additionally, as noted above, the trial court found A.C.S. did not comply with her service plan, and A.C.S. has not challenged that finding on appeal. While that finding did not relieve the

---

[6] While the witnesses discussed the fact that the Department removed A.M.B. based on allegations of physical and sexual abuse, neither the Department nor A.C.S. presented any evidence about the nature of those allegations. A.C.S. testified that she knew A.M.B. made outcries that she was sexually abused by a family friend while she was living with A.C.S.'s mother. A.C.S. also testified "I myself wasn't there" and that she contacted police when she learned about the outcry. A.C.S. expressly denied that she had ever physically abused A.M.B., and the Department did not present any evidence to controvert that denial.

Department of its burden to prove termination was in A.M.B.'s best interest, the trial court was permitted to treat the evidence underlying the finding as probative on that question. *See In re C.H.*, 89 S.W.3d at 28; *In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest."). "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Hollins testified that she reviewed the service plan with A.C.S. in August of 2023 and April of 2024 and she believed A.C.S. understood it. The plan itself, which A.C.S. signed, stated its purpose was "to help [A.C.S.] provide [her] child with a safe environment within the reasonable period specified in the plan." Hollins testified that A.C.S. "said she was willing to engage in services" but did not complete any. She testified that one service plan provider "tried to contact [A.C.S.] three times and there was no answer." A second provider "said [A.C.S.] did an intake, and they haven't heard from her since."

A.C.S. did not dispute Hollis's testimony that she did not complete any required services. She testified, however, that she "made attempts to comply" by contacting the providers listed in her service plan. She explained that internet and transportation issues, her housing situation, a recent miscarriage, her own mother's health problems, and the theft of her wallet hindered her ability to work services. A.C.S. did not believe she had been given a meaningful opportunity to engage in her services, but she testified she had "always been willing" to do so.

In performing its best-interest analysis, the trial court was permitted to consider A.C.S.'s proffered reasons for failing to engage with the service plan. *See Holley*, 544 S.W.2d at 371–72. It

could have reasonably determined, however, that those reasons did not excuse her failure to complete any services during the eleven months this case was pending. *See In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at \*3 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.) (considering parent's late start of service plan requirements); *In re F.H.T.*, No. 13-11-00545-CV, 2012 WL 2357736, at \*3–4 (Tex. App.—Corpus Christi–Edinburg June 21, 2012, no pet.) (mem. op.) (affirming termination order after "considering the offered excuses for non-compliance of the service plan"). It also could have reasonably inferred that A.C.S. lacked parental abilities, including the motivation to seek out and use available resources, based on her lack of engagement with the service plan. *See In re J.M.T.*, 519 S.W.3d at 270; *see also* TEX. FAM. CODE § 263.307(b)(10) (reviewing willingness/ability of child's family to seek out/accept/complete counseling services and to cooperate with/facilitate an appropriate agency's close supervision as part of best-interest determination); TEX. FAM. CODE § 263.307(b)(11) (reviewing willingness/ability of child's family to effect positive environmental/personal changes in a reasonable time to decide child's best interest); TEX. FAM. CODE § 263.307(b)(12) (determining whether the child's family demonstrates adequate parenting skills as part of best-interest evaluation).

The trial court could also properly consider the Department's evidence that A.C.S. failed to submit to required drug tests. *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at \*4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op). A.C.S.'s service plan stated that she tested positive for amphetamines and methamphetamines on June 20, 2023, and it required her to submit to random drug tests "throughout the duration of [the] case." Hollins testified that A.C.S. took one drug test "for the investigator" at the outset of this case but did not submit to any of the "[t]en or more" tests Hollins arranged. The trial court could have reasonably inferred that A.C.S.

failed to submit to the drug testing required by her service plan because she was still using illegal drugs. *See, e.g.*, *In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). While A.C.S. testified she was drug-free at the time of trial, the trial court was not required to believe that testimony. *See In re T.M.*, No. 02-22-00070-CV, 2022 WL 2527627, at *8 (Tex. App.—Fort Worth July 7, 2022, no pet.) (mem. op.).

A trial court conducting a best-interest analysis may also consider the stability of a parent's home. *See Holley*, 544 S.W.2d at 371–72. Hollins testified that A.C.S. had an apartment when this case began, but she was later evicted and began moving from "hotel to hotel." Hollins testified that she had difficulty finding A.C.S. throughout much of this case, and she described "driving up and down 410 to various hotels . . . looking for" her. She found some of the locations where A.C.S. had stayed, "but by the time [Hollins] got there [A.C.S.] was no longer staying there."

At the time of trial, A.C.S. had lived in the same motel for two months. Hollins testified that she visited the motel, and she did not identify any specific problems with the residence itself. She testified, however, that she did not believe the home was stable because A.C.S. was not employed and therefore was "not able to provide any type of support of [A.M.B.'s] basic needs." *See In re N.R.B.-E.*, No. 04-20-00271-CV, 2020 WL 6293148, at *3 (Tex. App.—San Antonio Oct. 28, 2020, pet. denied) (mem. op.) (evidence of parent's frequent moves and lack of employment supported finding that she "could not provide a stable home for her children").

Hollins testified A.M.B. was "very happy" in her current placement and wanted to stay there. The CASA volunteer, who visited A.M.B. twice per month, similarly testified that A.M.B was "doing excellent. Every time we see her, she's got a huge smile on her face, she's happy. When she leaves the [current placement] family, she runs to give everyone a hug and a kiss, they

say goodbye." The CASA volunteer also testified that A.M.B. initially struggled in her new school "due to the substantial amount of school that she missed the previous year" but had made the honor roll by the time of trial. Hollins testified that the current placement wanted to adopt A.M.B. TEX. FAM. CODE § 263.307(a).

A.C.S. asked the trial court to grant her more time to work services because she had been "for the most part, stable for the past couple of months." She believed she was ready to start "acquiring a job and a vehicle and all that to be able to start having more stability for [A.M.B.] . . . instead of hopping around from different place to different place." However, she did not articulate any plan to obtain stable employment or maintain her housing. *See In re K.D.*, No. 05-18-00849, 2018 WL 6187660, at *7 (Tex. App.—Dallas Nov. 27, 2018, pet. denied) (mem. op.); *see also Holley*, 544 S.W.2d at 371–72 (factfinder may consider parent's plans for child). The trial court could have reasonably found that A.C.S.'s testimony about her improved circumstances did not outweigh Hollins's testimony about A.C.S.'s past acts and omissions. *See In re J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices."); *In re E.D.*, 419 S.W.3d at 620; *In re C.H.*, No. 04-21-00240-CV, 2022 WL 3908537, at *7 (Tex. App.—San Antonio Aug. 31, 2022, no pet.) (mem. op.).

A.C.S. also testified that during a recent video call, A.M.B. told her "that she wanted to come back" and that she felt like an outcast in her current placement. A.C.S. testified that A.M.B. "is loved, she's getting what she needs, but she's not getting treated as equally as" other children in the home. The CASA volunteer confirmed that A.M.B. reported "feeling left out, because the other daughter [in the current placement] sleeps with her parents, typically[.]" She testified that both she and the foster parents had explained to A.M.B. that "it would be inappropriate for her to

sleep in the bed with both the mother and the father" and A.M.B. understood that explanation. The CASA volunteer testified that she believed A.M.B. was expressing only "a strong desire of having that same closeness with family—and family interaction. But outside of that, there have not been any concerns, in terms of being treated differently." She added that A.M.B.'s foster mother was "very proactive in ensuring that things are worked out immediately" and took active steps to include A.M.B. in the family. And, as noted above, both Hollins and the CASA volunteer testified that A.M.B. told them she was happy in her placement and wanted to stay there. The trial court had the sole authority to resolve these conflicts in the evidence regarding A.M.B.'s wishes. *See In re J.O.A.*, 283 S.W.3d at 346.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of A.C.S.'s parental rights was in A.M.B.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold that legally and factually sufficient evidence supports the trial court's best-interest finding, and we overrule A.C.S.'s arguments to the contrary.

CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice