

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00585-CV

**IN THE INTEREST OF K.J.J.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01550
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: December 18, 2024

AFFIRMED

Appellant T.J. challenges the trial court's order terminating her parental rights to her child, K.J.J. (born 2016).[1] She argues the evidence is legally and factually insufficient to support the trial court's finding that termination was in K.J.J.'s best interest. We affirm the trial court's order.

### BACKGROUND

On October 16, 2023, the Texas Department of Family and Protective Services removed K.J.J. from T.J.'s custody based on allegations of neglectful supervision. The Department obtained temporary managing conservatorship over K.J.J., placed him in foster care, and filed a petition to terminate the parental rights of both T.J. and K.J.J.'s father, H.H. The Department created a family

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and his biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

service plan requiring T.J. to, inter alia, attend parent-child visits and parenting classes, undergo a drug assessment and random drug testing, and identify her support system. The Department ultimately pursued termination of T.J.'s parental rights.

On August 15, 2024, ten months after removal, the trial court held a bench trial at which T.J. appeared. The trial court heard testimony from Department caseworker Elyssa Prieto and T.J., and it admitted T.J.'s service plan into evidence. The court also stated on the record that it had read and considered a CASA volunteer's report that was filed with the court. On August 20, 2024, the trial court signed an order terminating T.J.'s parental rights pursuant to Texas Family Code section 161.001(b)(1)(N) and (O) and its finding that termination of T.J.'s parental rights was in K.J.J.'s best interest. T.J. appealed.[2]

## ANALYSIS

T.J. challenges only the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in K.J.J.'s best interest. She does not challenge the sufficiency of the evidence to support the trial court's predicate findings under section 161.001(b)(1)(N) and (O). *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(N) (parent constructively abandoned child in Department's custody), (O) (parent failed to comply with court-ordered service plan). Accordingly, we must accept those unchallenged findings as true. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied).

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *Id.* at 683 (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize

---

[2] The trial court also terminated H.H.'s parental rights. He is not a party to this appeal.

involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate T.J.'s parental rights and that termination was in K.J.J.'s best interest. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

***Best Interest***

*Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing these factors, the court focuses on the best interest of the child, not the best interest of the parent. *In re A.K.*, 487 S.W.3d 679, 686 (Tex. App.—San Antonio 2016, no pet.).

A best-interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

"[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, we presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

### *Application*

K.J.J. was seven years old at the time of his removal and eight years old at the time of trial. *See* TEX. FAM. CODE § 263.307(b)(1) (trial court may consider child's age and physical/mental vulnerabilities). The Department presented evidence that it removed him because he and T.J. were found in a parking lot while T.J. was asleep and under the influence of alcohol. *See id.* § 263.307(b)(8) (trial court may consider parent's history of substance abuse); *In re L.C.S.*, No. 04-17-00313-CV, 2017 WL 3880018, at *5 (Tex. App.—San Antonio Sept. 6, 2017, no pet.) (mem. op.) (considering evidence of parent's history of alcohol abuse). Prieto testified T.J. "was arrested during that time and didn't have any place for [K.J.J.] to go." *See* TEX. FAM. CODE § 263.307(b)(13) (trial court may consider "whether an adequate social support system . . . is available to the child"). Prieto also testified that T.J. had a history with the Department, that she had lost custody of one other child, and that two prior Department cases involving K.J.J. also revolved around T.J.'s use of alcohol. *See In re U.D.R.*, No. 04-16-00490-CV, 2016 WL 6772028, at *5 (Tex. App.—San Antonio Nov. 16, 2016, no pet.) (mem. op.) (considering evidence of parent's "past involvement with the Department"); *see also* TEX. FAM. CODE § 263.307(b)(4) (trial

court may consider "whether the child has been the victim of repeated harm after the initial report and intervention by the department"); *In re E.D.*, 419 S.W.3d at 620.

At trial, the Department's attorney asked T.J. if she had a drinking problem, and she responded, "I did drink quite a bit before, yes." Prieto testified that T.J. tested positive for alcohol in July of 2024; as noted above, the trial in this case occurred on August 15, 2024. Prieto explained, "When I asked [T.J.] how often she drinks, she said she never drinks, but she happened to drink two times in July and that's why her alcohol test was positive." Prieto also testified that the July 2024 test was the first one T.J. appeared for in this case, even though Prieto tried to send her for testing previously. Based on this testimony, particularly the recency of the positive alcohol test, the trial court could properly credit Prieto's testimony that she did not believe T.J. demonstrated sobriety or addressed her alcohol use during this case. *In re L.C.S.*, 2017 WL 3880018, at *5; Tex. Fam. Code § 263.307(b)(8).

The evidence showed T.J. was entitled to weekly visits with K.J.J. but only attended those visits "[a]n average of once a month." *See In re D.L.H.*, No. 04-04-00876-CV, 2005 WL 2989329, at *2 (Tex. App.—San Antonio Nov. 9, 2005, no pet.) (mem. op.) (considering evidence of parents' failure to consistently visit child). Prieto testified that T.J. gave "[v]arious reasons" for missing visits, "[m]ostly due to transportation or she would say that she was sick from walking in the rain, different reasons." T.J. confirmed Prieto's testimony on this point, testifying that she missed visits due to her work schedule, transportation issues, and personal illness. She also explained that she missed some visits because K.J.J. was out of state at the relevant time.

Prieto testified that K.J.J. "was very upset" when T.J. missed visits. *See In re M.L.H.*, No. 04-21-00408-CV, 2022 WL 526501, at *4 (Tex. App.—San Antonio Feb. 23, 2022, pet. denied) (mem. op.). Prieto also testified that T.J. continued to miss visits after she was told it was upsetting K.J.J. *See In re D.L.H.*, 2005 WL 2989329, at *2. T.J. testified that she understood missing visits

was emotionally harmful to both K.J.J. and to herself. The trial court could have determined this evidence was relevant to both T.J.'s parenting skills and her willingness and ability to effect positive changes within a reasonable period of time. *See* TEX. FAM. CODE § 263.307(b)(11), (12). It also could have concluded this evidence was relevant to K.J.J.'s emotional needs. *See Holley*, 544 S.W.2d at 371–72.

Prieto visited the home T.J. lived in at the beginning of this case and testified that the home was appropriate. She also testified, however, that T.J. moved to a different home approximately two weeks before trial. Prieto testified that she did not know where T.J. lived at the time of trial because T.J. refused to give her the address. *See In re I.E.P.*, No. 04-24-00255-CV, 2024 WL 3802517, at *4 (Tex. App.—San Antonio Aug. 14, 2024, no pet.) (mem. op.); *In re D.R.F.*, No. 04-14-00920-CV, 2015 WL 5451181, at *3, *6 (Tex. App.—San Antonio Apr. 15, 2015, no pet.) (mem. op.). She testified that T.J. told her "because her rights were being terminated, I [Prieto] didn't even need to know where she was living." On this issue, T.J. testified:

> I could have gave her my home address. I was just a little upset she said I had termination. And she asked where I lived at. I told her Medical Center. She said, "Can I do a visitation?" I said, yes, she can. That was after I heard more about the termination part and like why. What does that mean? If my baby is getting terminated, why would you need to know where I live?

*See In re D.R.F.*, 2015 WL 5451181, at *3 (considering similar testimony). The trial court could have considered this testimony in analyzing whether T.J. showed a willingness and ability to cooperate with and facilitate the Department's supervision during this case. TEX. FAM. CODE § 263.307(b)(10).

As noted above, the trial court found T.J. did not comply with her service plan, and T.J. has not challenged that finding on appeal. While that finding did not relieve the Department of its burden to prove termination was in K.J.J.'s best interest, the trial court was permitted to treat the evidence underlying the finding as probative on best interest. *See In re C.H.*, 89 S.W.3d at 28; *In*

*re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest."). "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Prieto testified that she reviewed the service plan with T.J. in November of 2023 and she believed T.J. understood its requirements. The plan itself, which T.J. signed, stated its purpose was "to help [T.J.] provide [her] child with a safe environment within the reasonable period specified in the plan." Prieto described T.J. as "[n]oncompliant" with the plan. She noted that T.J. completed a psychological evaluation and started the drug counseling recommended by the evaluation, but she did not complete the counseling. *See* TEX. FAM. CODE § 263.307(b)(6) (trial court may consider results of psychiatric, psychological, or developmental evaluations of parent). She further testified that while T.J. completed a parenting course, at the completion of that course "it was recommended that she's not reunified with [K.J.J.], because she did not address the reasons for removal and minimized her role in the case." *See In re J.A.R.R.*, No. 04-22-00184-CV, 2022 WL 4362464, at *9 (Tex. App.—San Antonio Sept. 21, 2022, no pet.) (mem. op.) (considering evidence parents minimized their role in children's removal); *see also* TEX. FAM. CODE § 263.307(b)(6), (11). Additionally, as noted above, she testified that T.J. did not appear for any drug tests required by the plan until the month before trial. *See* TEX. FAM. CODE § 263.307(b)(8), (10).

T.J. did not dispute Prieto's testimony that she did not complete the service plan. She testified that she had recently begun engaging with her services and that she had tried to do so "months upon months ago," but the providers she contacted "never returned [her] phone calls or e-mails." She also testified that she alerted Prieto to the providers' failure to respond and that Prieto helped her. Prieto agreed that she "tried to help [T.J.] personally set up the appointments and

everything, just because she stated she was having issues." She added, however, that she "got [T.J.] set up for services, but she didn't attend the sessions."

In performing its best-interest analysis, the trial court was permitted to consider T.J.'s proffered reasons for failing to engage with the service plan. *See Holley*, 544 S.W.2d at 371–72. It could have reasonably determined, however, that those reasons did not excuse her failure to complete the plan during the ten months this case was pending. *See In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *3 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.) (considering parent's late start of service plan requirements); *In re F.H.T.*, No. 13-11-00545-CV, 2012 WL 2357736, at *3–4 (Tex. App.—Corpus Christi–Edinburg June 21, 2012, no pet.) (mem. op.) (affirming termination order after "considering the offered excuses for non-compliance of the service plan"). It also could have reasonably inferred that T.J. lacked parental abilities, including the motivation to seek out and use available resources, based on her failure to timely engage with the service plan. *See In re J.M.T.*, 519 S.W.3d at 270; *see also* TEX. FAM. CODE § 263.307(b)(10), (11), (12).

Prieto testified that K.J.J. was doing well in his foster home, which was the same home he had been in since his removal. She also testified that he was attending therapy, where he had "built a good rapport with" his therapists and was learning "to express himself better." The Department's permanency plan for K.J.J. was non-relative adoption, either by his current foster family or by the family that had adopted his biological brother. *See* TEX. FAM. CODE § 263.307(a); *Holley*, 544 S.W.2d at 371–72. Prieto testified it was in K.J.J.'s best interest to remain in his current placement, and the CASA volunteer's report expressed the same conclusion. Prieto also testified that she believed termination was in K.J.J.'s best interest because she did not believe T.J. had made any behavioral changes or that she had shown stability, sobriety, or an ability to meet K.J.J.'s needs.

The CASA volunteer, in contrast, believed the trial court should give T.J. more time to complete her services.

Both Prieto and T.J. testified that K.J.J. was bonded to his mother. T.J. testified that she had maintained a steady job and a residence throughout this case, and she noted that she had recently held a birthday party for K.J.J. at the restaurant where she worked. T.J. further testified that Prieto attended the party and met T.J.'s employers. Prieto testified that she monitored all of T.J.'s visits with K.J.J., the visits were appropriate, and T.J. did not appear to be under the influence of drugs or alcohol when Prieto visited with her. T.J. testified that she "greatly would appreciate" if the trial court extended the case to allow her to complete her services.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of T.J.'s parental rights was in K.J.J.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold that legally and factually sufficient evidence supports the trial court's best-interest finding, and we overrule T.J.'s arguments to the contrary.

### CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice