

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-26-00086-CV

**IN THE INTEREST OF J.E.F.** and J.J.F., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01892
Honorable Raul Perales, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Lori I. Valenzuela, Justice
               Velia J. Meza, Justice

Delivered and Filed: May 13, 2026

AFFIRMED

Appellant J.F. ("Father") appeals the trial court's order terminating his parental rights to his children, J.E.F. (born 2020) and J.J.F. (born 2023).[1] Father contends the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(D), (E), and (N) and its finding that termination was in the children's best interest. We affirm the trial court's order of termination.

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their current caregiver and pseudonyms to refer to their parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

In December of 2024, the Texas Department of Family and Protective Services ("the Department") removed the children after receiving two separate referrals: one for neglectful supervision, and one for domestic violence in the home. The Department placed the children in foster care and filed a motion to terminate the parental rights of the children's mother, E.R.C. ("Mother") and Father. For most of this case, including during trial, Father was incarcerated.

On January 21, 2026, the parties tried the Department's termination petition to the bench. Three witnesses testified at trial: Father; Department caseworker Erica Anderson; and the children's foster mother, K.M. After hearing the evidence, the trial court signed an Order of Termination terminating both Mother's and Father's parental rights pursuant to section 161.001(b)(1)(D), (E), and (N) and its finding that termination of Mother's and Father's parental rights was in the children's best interest. Father timely filed this appeal.[2]

## ANALYSIS

### *Standard of Review*

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.).

---

[2] Mother is not a party to this appeal.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *In re J.P.B.*, 180 S.W.3d at 573. Where, as here, the trial court acts as factfinder in a bench trial, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. *See id.*

### *Statutory Termination Grounds*

In his first three issues on appeal, Father challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under Texas Family Code section 161.001(b)(1)(D), (E), and (N). Ordinarily, when the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.). However, because termination under subsections (D) or (E) may have implications for a parent's parental rights to other children, we must address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider Father's sufficiency argument as to subsections (D) and (E) before we turn to his challenge to the subsection (N) finding. We consolidate our analysis as to the subsection (D) and (E) grounds because the evidence concerning those grounds is interrelated. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.).

*Applicable Law*

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d at 125. "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.* A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of a potential for danger is sufficient. *Id.* The relevant period for review of environment supporting termination under subsection (D) is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger

which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Courts may consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

*Application*

"'Due process requires meaningful appellate review of orders terminating parental rights.'" *In re Z.R.M.*, 665 S.W.3d 825, 829 n.6 (Tex. App.—San Antonio 2023, pet. denied) (alteration omitted, quoting *In re G.M.*, No. 04-19-00080-CV, 2019 WL 3432088, at *4 (Tex. App.—San Antonio July 31, 2019, pet. denied) (mem. op.) (Watkins, J., concurring)). Recognizing our duty to perform this review, we have "repeatedly expressed concerns about underdeveloped records in parental termination appeals." *In re Z.R.M.*, 665 S.W.3d at 829 n.6 (listing cases). The reporter's record in this case contains less than 70 pages of witness testimony, much of which focused exclusively on Mother's conduct. The only evidence relevant to this appeal—that of Father's conduct—came primarily from the testimony of Father and caseworker Anderson, and neither witness's testimony was particularly detailed or specific. We are thus once again faced with a situation in which the Department sought to permanently sever the relationship between two children and both of their parents on an underdeveloped record. Nevertheless, after reviewing the record under the applicable standard of review, we conclude we have no choice but to hold that the evidence is legally and factually sufficient to support the trial court's findings under subsections (D) and (E).

Subsection (D) permits termination based on a single act or omission. *See In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied)

(mem. op.). Here, Anderson testified that the initial intake in this case occurred after the children "had been left alone for an extended period of time" in 2024. She further testified that when Mother and Father returned, Father was intoxicated. Father denied that the children had been left alone or that he was intoxicated when he returned. However, he conceded that he was arrested for "abandonment, child endangerment" after that incident and that he was eventually convicted of that charge. Based on this evidence, the trial court could have reasonably found that Father knowingly placed or knowingly allowed the children to remain in an endangering environment. *See* TEX. FAM. CODE § 161.001(b)(1)(D); *In re D.G.*, No. 01-20-00720-CV, 2021 WL 1256895, at *6 (Tex. App.—Houston [1st Dist.] Apr. 6, 2021, no pet.) (mem. op.) (considering evidence that children were removed "because they were not being adequately supervised").

Additionally, "inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of [the child] as required for termination under subsection D." *In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at *3 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.) (internal quotation marks omitted, alteration in original). Relatedly, a parent's incarceration for domestic violence and probation violations "introduces an element of instability into the child's life" and can therefore support termination under subsections (D) and (E). *Id.* at *6. "Evidence of domestic violence is relevant to endangerment, even if the violence is not directed at the child." *N.K. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00028-CV, 2022 WL 2673236, at *6 (Tex. App.—Austin July 12, 2022, no pet.) (mem. op.).

Here, Anderson testified that in addition to the abandonment referral, there was another referral in this case based on "concern for family violence in the home" perpetrated by Father. Father's service plan, which was admitted into evidence at trial, noted that he "has a history of

Intimate Partner Violence," that his relationship with Mother was "unhealthy," and that he "tends to be aggressive which may lead to further altercations." *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."). While Father denied any physical violence in his relationship with Mother, he acknowledged that in October of 2024—approximately two months before the Department removed the children—he violated a protective order that was issued after a 2022 altercation between him and Mother. Father testified that he was convicted of a felony for violating the protective order, and at the time of trial, he was incarcerated on that conviction. *See In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *9 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.) ("Criminal activity that exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child."). The trial court could have reasonably found that this evidence showed a conscious course of conduct that endangered the children, especially when considered in light of Father's earlier child abandonment conviction. *See* TEX. FAM. CODE § 161.001(b)(1)(E); *In re N.M.R.*, 2022 WL 3640223, at *6.

It was undisputed that Father was not able to visit with the children during this case due to his incarceration. Father testified that at the time of trial in January of 2026, he had "been locked up a year." While "mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child," a parent's imprisonment "is certainly a factor the trial court may weigh when considering endangerment." *In re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021) (internal quotation marks omitted). Furthermore, "[a] parent's lack of contact with a child and his or her absence from the child's life endanger the child's emotional well-being." *In re Y.W.*, No. 02-22-00334-CV, 2022 WL 17841830, at *6 (Tex. App.—

Fort Worth Dec. 22, 2022, no pet.) (mem. op.). Here, the record showed that at the time of trial, J.E.F. was five years old and J.J.F. was two years old. Father's year of incarceration thus amounted to approximately one-fifth of J.E.F.'s life and one-half of J.J.F.'s life. The children's foster mother, K.M., testified that during that time, Father had not provided anything to her for the children's care and had not reached out to her to see how the children were doing. She also testified that neither of the children ever asked for Father. On this record, the trial court could have reasonably determined that Father's absence from the children's lives endangered their emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(D), (E); *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

When viewed through the applicable standards of review, the evidence described above is both legally and factually sufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(D) and (E). We therefore overrule Father's first and second issues. Because we have concluded the evidence supports the subsection (D) and (E) findings, we need not address Father's challenge to the subsection (N) finding. TEX. R. APP. P. 47.1; *In re D.J.H.*, 381 S.W.3d at 611–12.

### *Best Interest*

In his fourth issue, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interest.

### *Applicable Law*

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Department has the burden of rebutting this presumption with clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d

at 97. "[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (internal quotation marks omitted). To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding does not require proof of any particular factors. *In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest[.]" *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination may also be probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his

---

[3] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.— Dallas 1995, no writ).

*Application*

Much of the evidence described above in our discussion of the endangerment findings, particularly the evidence regarding the children being left alone, Father and Mother's history of domestic violence, and Father's violation of the protective order, is also relevant to the best interest finding. *See In re C.H.*, 89 S.W.3d at 28; TEX. FAM. CODE § 263.307(b)(7) (trial court may consider history of abusive or assaultive conduct by family/others who have access to home in best-interest determination); TEX. FAM. CODE § 263.307(b)(12) (trial court may consider whether the child's family demonstrates adequate parenting skills). Because the children were both very young, the trial court could have reasonably found that they were uniquely vulnerable to harm from the conduct that brought them into the Department's care. *See* TEX. FAM. CODE § 263.307(b)(1); *In re B.D.A.*, 546 S.W.3d 346, 361 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

Father testified that he loved his children very much and that if he had not been incarcerated during this case, he "would have had [the children] back already" because he "would have done every service," "completed every drug test," and "done anything it took to get [the] kids back." Father also testified, however, "This is not my first Child Protective Services case. . . . [T]hey had allegations that I used drugs, and the case got dropped. . . . I've been [involved in a Department case] twice." And, as noted above, Anderson testified that there were two separate referrals in this case before the Department removed the children. Based on this evidence of Father's prior history

with the Department, the trial court could have disbelieved his testimony that his incarceration was the only reason why the children were not in his custody. *See, e.g.*, *In re E.J.M.*, 673 S.W.3d 310, 335 (Tex. App.—San Antonio 2023, no pet.) (en banc); *see also* TEX. FAM. CODE § 263.307(b)(4) (trial court may consider whether child has been the victim of repeated harm after initial report and Department's intervention); *In re E.D.*, 419 S.W.3d at 620 (trial court may consider parent's past conduct).

Both Anderson and K.M. testified that the children are doing well in their current placement and that K.M. intends to adopt them. *See* TEX. FAM. CODE § 263.307(a) ("In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). K.M. had previously adopted the children's half-brother, and she testified that the three children "get along very well." *See In re D.D.D.*, No. 04-24-00084-CV, 2024 WL 3056683, at *5 (Tex. App.—San Antonio June 20, 2024, no pet.) (mem. op.) (noting that keeping siblings together is relevant to best-interest determination).

Anderson and K.M. also testified that J.E.F. has exhibited defiant and aggressive behavior. K.M. testified, for example, that J.E.F. "has gotten so upset that she did state at the beginning of this month that she was going to cut my face and get sticks to build a fire and put me in it. That way I would not go back to my body." K.M. testified that J.E.F. was seeing a psychiatrist and was engaged in behavioral and talk therapy to deal with those issues. While there was no evidence that J.J.F. exhibited similar behaviors, Anderson and K.M. testified that he had received swallow, occupational, speech, and social skills therapy and that he was making progress in those areas. The trial court could have reasonably determined that this evidence of the children's physical and

emotional needs was relevant to the best-interest analysis. *See Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE § 263.307(b)(1).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in the best interest of his children. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding. *See id.* We overrule Father's fourth issue.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice